In the Matter of the Contract Arbitration Between: CITY OF RICHFIELD, Appellant,

v.

LOCAL NO. 1215, INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS, Respondent,

and

State of Minnesota, by Warren Spannaus, Attorney General, Intervenor, Respondent.

No. 48638.

Supreme Court of Minnesota.

Feb. 2, 1979.

**44**

LeFevere, Lefler, Pearson, O'Brien & Drawz and James P. O'Meara, Minneapolis, for appellant.

Peterson, Engberg & Peterson and Bruce P. Grostephan, Minneapolis, Warren Spannaus, Atty. Gen., Richard Allyn, Sol. Gen., Stephen Befort, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Oppenheimer, Wolff, Foster Shepard & Donnelly, Eric R. Miller, Donald W. Selzer, Jr., St. Paul, amicus curiae, for Minn. Ed. Assn. seeking affirmance.

Hall & Swanson and Clinton J. Hall, Forest Lake, amicus curiae, for Minn. Elementary School Principals Assn. seeking affirmance.

Gregg M. Corwin, Golden Valley, amicus curiae, for AFSCME Councils seeking affirmance.

Stanley G. Peskar, St. Paul, amicus curiae, General Counsel for League of Minnesota Cities seeking reversal.

Seyfarth, Shaw, Fairweather & Geraldson, R. Theodore Clark, Jr., Bettye S. Kitch, Chicago, Ill., amicus curiae, for National League of Cities seeking reversal.

YETKA, Justice.

This is an appeal by the plaintiff, city of Richfield (Richfield) from a judgment entered February 14, 1978, pursuant to an amended order of the Hennepin County District Court filed February 10, 1978, upholding the constitutionality of the compulsory binding arbitration provisions of the Public Employment Labor Relations Act (PELRA), Minn.St.1976, §§ 179.66–.77 and confirming an arbitration award issued to resolve negotiation disputes between plaintiff and defendant, Local No. 1215, International Association of Fire Fighters (Local 1215). Pursuant to Rule 24.04, Rules of Civil Procedure, Richfield notified the Minnesota attorney general that this action involved a challenge to the constitutionality of a Minnesota statute. The State of Minnesota has intervened to defend the constitutionality of PELRA. We affirm.

The facts of this case are uncontested. Local 1215 is the exclusive representative of certain employees of the Richfield Fire Department. On December 31, 1975, Local 1215's employment contract with Richfield expired. Pursuant to PELRA, Local 1215 and Richfield engaged in collective bargaining negotiations in an attempt to reach an agreement on the terms of a new contract. When negotiations failed to resolve all of the issues in dispute, Local 1215 petitioned the director of the Bureau of Mediation Services for binding arbitration. The director then certified that the negotiations had reached an impasse, and the nine issues in question were submitted for resolution to a three-member arbitration panel selected by the parties from a list provided by the Public Employment Relations Board (PERB). Minn.St. 179.72, subds. 5 and 6. Richfield submitted final positions on eight of the unresolved issues but submitted no position on issue IX. On March 31, 1977, the panel issued its award, including an award on issue IX, which states that the contract shall be in effect for the year 1976, shall be automatically renewed unless either party notifies the other within a specified time period of its desire to modify or terminate the agreement, and shall be in effect until a new contract is ratified by the parties.

The following issues are raised on appeal:

(1) Does PELRA unconstitutionally delegate legislative power?

(2) Does the arbitration panel's award on issue IX exceed the panel's jurisdiction?

(3) Does the district court have jurisdiction to review the arbitration panel's awards?

In addition the League of Minnesota Cities has raised certain Federal constitutional questions in its brief as amicus curiae. Because these issues were not raised before the trial court, we will not deal with them here. We do not hold that a case might not be presented to us that on its face raised serious Federal constitutional questions of which we would feel compelled to take note, but such is not the situation in this case. Thus, we proceed to a discussion of the remaining issues.

1. PELRA is a comprehensive regulation of labor relations in the public sector. Under the Act, public employees and their employers are mutually obligated to meet and negotiate the "terms and conditions of employment," as that term is defined in Minn.St. 179.63, subd. 18. If the collective bargaining process ends in an impasse, either party or both parties may petition the director of the Bureau of Mediation Services for binding arbitration of the parties' final positions on disputed matters. Minn.St. 179.69, subds. 1 to 3. The arbitration then proceeds in one of two ways; under Minn.St. 179.72, subd. 6, the parties either agree on a single arbitrator to hear the dispute or alternately strike names from a list of seven arbitrators furnished by PERB until a panel of three remains. Under either procedure, the resolution of the terms and conditions of employment is binding on the parties. Minn.St. 179.72, subd. 7. Richfield argues that the above procedure is unconstitutional because it impermissibly delegates legislative authority. See, Minn.Const. art. 1, § 1, and art. 3, § 1.

■ In cases that challenge the constitutionality of a statute, the law is presumed to be constitutional. *Head v. Special School District No. 1*, 288 Minn. 496, 506, 182 N.W.2d 887, 894 (1970), certiorari denied

sub nom., *Minneapolis Federation of Teachers Local 59 v. Spannaus*, 404 U.S. 886, 92 S.Ct. 196, 30 L.Ed.2d 168 (1971). An act will not be found unconstitutional unless its invalidity is clear or it is shown beyond a reasonable doubt to violate the constitution. E. g., *Grobe v. Oak Center Creamery Co.*, 262 Minn. 60, 61, 113 N.W.2d 458, 459 (1962); *State v. Lanesboro Produce & Hatchery Co.*, 221 Minn. 246, 255, 21 N.W.2d 792, 796 (1946). We declare a law unconstitutional only if absolutely necessary, and then only with great caution. E. g., *City of Pipestone v. Madsen*, 287 Minn. 357, 363, 178 N.W.2d 594, 598 (1970); *Minneapolis Gas Co. v. Zimmerman*, 253 Minn. 164, 173, 91 N.W.2d 642, 650 (1958); *State v. Lanesboro Produce & Hatchery Co.*, 221 Minn. 255, 21 N.W.2d 796.

■ The nondelegation doctrine teaches that purely legislative power cannot be delegated. *Lee v. Delmont*, 228 Minn. 101, 112, 36 N.W.2d 530, 538 (1949). However, where a law embodies a reasonably clear policy or standard to guide and control administrative officers, so that the law takes effect by its own terms when the facts are ascertained by the officers and not according to their whim, then the delegation of power will be constitutional. 228 Minn. 113, 36 N.W.2d 538.

It is not necessary in the instant case to delineate the minimum standards necessary for a delegation of legislative power to receive constitutional protection. A comparison of the statute involved here with another found by this court to be valid indicates to us that the provisions of PELRA are constitutional.

In *Fairview Hospital Association v. Public Building Service Union, Local 113*, 241 Minn. 523, 64 N.W.2d 16 (1954), the union representing the employees at nine charitable hospitals sought to have a binding arbitration provision[1] similar to the provisions

---

1. Minn.St.1953, § 179.38, the challenged provision, stated, in part: "In the event of the existence of any labor dispute which cannot be settled by negotiation between the charitable hospital employers and their employees, either such employers or employees may petition and

avail themselves of the facilities of the department of labor * * *. If such dispute is not settled within ten days after submission to conciliation, any unsettled issue of maximum hours of work and minimum hourly wage rates shall, upon service of written notice by either

being challenged in the instant case declared an improper delegation of legislative authority because, inter alia, it lacked adequate standards to guide the arbitrators. 241 Minn. 544, 64 N.W.2d 30. The court noted that:

"Section 179.40 sets forth that the public policy of the state with reference to labor relations is:

" 'To protect and promote the interests of the public, employees and employers alike, * * *;

" 'To promote industrial peace, regular and adequate income for employees, and uninterrupted production of goods and services; and

" 'To reduce the serious menace to the health, morals and welfare of the people of this state arising from economic insecurity due to stoppages and interruptions of business and employment.' " 241 Minn. 546, 64 N.W.2d 30.

Relying on the principle that the delegation of legislative authority need be founded only upon a definite policy and rule of action to guide the administrative agency, and noting that some statutes containing only a general standard have been declared to be sufficiently definite, this court ruled that Minn.St. 179.40 provided adequate standards to guide the arbitrators under the provision in question. 241 Minn. 546, 64 N.W.2d 31.

In the instant case, the public policy behind PELRA is set forth in Minn.St. 179.61:

"It is the public policy of this state and the purpose of sections 179.61 to 179.77 to promote orderly and constructive relationships between all public employers and their employees, subject however, to the paramount right of the citizens of this state to keep inviolate the guarantees for their health, education, safety and welfare."

This policy statement is virtually identical to the one cited in *Fairview, supra*, which was held to provide adequate standards to guide arbitrators.

Richfield, nevertheless, seeks to distinguish that case on various grounds. While there are aspects of the two cases that may differ, other provisions in PELRA make clear that there are adequate standards. In the memorandum accompanying its amended order of February 10, 1978, the district court summarized a number of these provisions:

"2. Binding arbitration may be invoked only after negotiation and mediation efforts have been exhausted and the director has certified the existence of an impasse. Minn.Stat. § 179.69, subd. 3.

* ° * * * * *

"7. The jurisdiction of the arbitration panel is limited to disputed 'terms and conditions of employment.' Minn.Stat. § 179.72, subd. 7.

"8. The arbitration award is to be issued within a prescribed time limit and only upon a majority vote. Minn.Stat. § 179.72, subd. 7.

"9. In resolving the dispute the arbitration panel must give 'due consideration to the statutory rights and obligations of public employers to officially manage and conduct its operations within the legal limitations surrounding the financing of such operations.' Minn.Stat. § 179.72, subd. 7.

"10. A decision of the panel is void to the extent that it violates any statute, rule, municipal charter or ordinance, or causes any penalty to be incurred thereunder. Minn.Stat. § 179.72, subd. 7.

"11. The arbitration panel must act in accordance with the policy guidelines set forth [sic] in Minn.Stat. § 179.61 which states, *interalia*, [sic] that the purpose of the PELRA is 'to promote orderly and constructive relationships between all public employers and their employees, subject however to the paramount right of the citizens of this state to keep inviolate the guarantees for their health, education, safety and welfare.'

party upon the other party and the State Labor Conciliator, be submitted to the determination of a board of arbitrators whose determination shall be final and binding upon the parties. * * *' "

"12. Arbitration orders are subject to judicial review pursuant to Minn.Stat. § 572.19, and § 572.20."

Although the standards allow the arbitrators fairly wide latitude in their determinations, this does not suggest that such freedom is unconstitutional. It would be difficult if not impracticable to formulate rigid standards to guide the arbitrators in dealing with the complex and potentially volatile issues that might arise during labor negotiations. To do so might well destroy the flexibility necessary for the arbitrators to effect the legislative purpose of enacting the law. Cf., *State ex rel. Brown v. Johnson*, 255 Minn. 134, 140, 96 N.W.2d 9, 14 (1959) (noting the need for flexibility to carry out purpose of labor relations law).

█ It is also insisted that the arbitrators are not accountable to the electorate with respect to decisions that involve fundamental determinations of public policy. Under the Act, PERB consists of five members appointed by the governor with the advice and consent of the senate. Minn.St. 179.72, subd. 1. The board maintains a list of names of arbitrators, Minn.St. 179.72, subd. 5. When the final positions of the disputing parties are certified to the board, the parties alternately strike names from a list of seven arbitrators until three remain or, if either party requests, select a single arbitrator. Minn.St. 179.72, subd. 6.

The particular concern here is that the arbitrators determine such things as wages, hours, and work conditions, which affect local budgets, yet the arbitrators are not accountable to the taxpayers. This is properly a function that must be performed by the legislature, it is contended, so that the public can hold the decisionmakers accountable for their actions. But accountability to the public is like delegation of power; both are a matter of degrees. Although the arbitrators are not directly accountable to the public for their decisions, various provisions ensure the competence and accountability of the arbitrators. The arbitrators on the list must be "qualified by experience and training in the field of labor management negotiations and arbitration."

Minn.St. 179.72, subd. 5. Names can be removed by a majority vote of PERB. Presumably, if an arbitrator is found not to be qualified or makes awards that are totally inappropriate, his or her name will be removed. And, as noted above, in making awards, the arbitrators are to give consideration to promoting harmonious relationships between public employers and their employees, with primary concern for the health, education, safety, and welfare of the citizens of this state.

The arbitrators must also make awards only after considering the potential financial impact on the community. They are to consider a city's financial situation and in particular must give "due consideration to the statutory rights and obligations of public employers to efficiently manage and conduct its [sic] operations within the legal limitations surrounding the financing of such operations." Minn.St. 179.72, subd. 7. At the same time, PELRA protects a city against having to forfeit its right to control managerial functions. A city need not negotiate matters that are inherently managerial, including budget, number of personnel, and programs. Minn.St. 179.66, subd. 1.

There is also a pragmatic reason for the legislature's removal of the arbitrators from the immediate pressures of public opinion. The arbitrators' position is inherently one of trust; the parties must feel confident that the panel will listen to their positions, weigh the evidence, consider the panel's statutory obligations, and come to a reasonable decision. The legislature may well have believed that exposing the arbitrators to more direct public input would influence the panels and undermine the effort to prevent work stoppages. If the parties have little faith in the arbitration process, they will not resort to it. If there were an impasse in labor negotiations without a mutually satisfying means of resolving the conflicts, strikes would likely occur and the public health, safety, and welfare would be jeopardized. We feel, therefore, that PELRA provides for an adequate de-

gree of accountability by the arbitrators to the public.

■ The use of binding arbitration is also criticized because it tends to be inflationary, unfair, or detrimental to collective bargaining. A determination of whether the allegations are true is beyond the scope of the jurisdiction of this court; it is more properly a legislative matter. Courts are not arbitrators of legislative wisdom but check to determine if there has been an unauthorized or unconstitutional delegation of power. *School District of Seward Education Association v. School District*, 188 Neb. 772, 783, 199 N.W.2d 752, 759 (1972). Even if a law is unwise, that is not a basis for our declaring the Act invalid. See, *Lee v. Delmont*, 228 Minn. 109, 36 N.W.2d 536. If the public, cities, or public employees are dissatisfied with the procedures under PELRA, change should be made through the legislature.

The amicus curiae brief of the League of Minnesota Cities suggests two alternatives to compulsory arbitration, namely, a public referendum on the proposed award, or approval of the award by the local legislative body. While we believe that those alternatives are matters best left to the state legislature, we feel compelled to comment. Little would be gained by referring a proposal back to the same city council that earlier could not arrive at a negotiated settlement, and thus compelled arbitration, and that now legally contests the very award made. Moreover, submission of a settlement to the voters could be used by a city council to avoid negotiating where it felt public pressure not to raise taxes and yet knew that some concessions to the demands of its employees were necessary. In such a situation it would have little incentive to bargain in good faith if it could simply reject all offers or demands, allow the matter to go to an arbitration panel, reject the award of the panel, and then allow the same to go to the voters. Viewed as a whole, PELRA is valid; the delegation of authority and its standards have not been shown beyond a reasonable doubt to violate the constitution.

■ 2. The award on issue IX reads as follows:

"This agreement shall be in full force and effect, and all of its provisions retroactive from January 1, 1976, to December 31, 1976, and shall be automatically renewed from year to year thereafter unless either party shall notify the other in writing on or before June 1, 1976, that he desires to modify or terminate this agreement. *Should notice to modify or terminate the contract be served, the provisions of the current contract shall control regardless of the termination date, until the parties ratify a new agreement.*" (The italicized sentence is that submitted in arbitration by Local 1215; the first sentence was part of the predecessor contract.)

Richfield contends that the italicized portion of the survivorship clause is not included within the meaning of the "terms and conditions of employment" and, consequently, the arbitrators' award is void. Specifically, Richfield argues that the italicized clause is a nonmandatory subject of bargaining and is not within the subject matter jurisdiction of the arbitrators.

There are two means by which disputed matters may be heard by an arbitration panel. Either the employer includes the issues in its final position or the issues fall within the meaning of terms and conditions of employment.[2] Since Richfield did not include the survival clause in its final position, the validity of the award depends upon whether the clause properly falls within the

2. Minn.St. 179.72, subd. 7, provides, in part: " * * * The panel shall have no jurisdiction over nor authority to entertain any matter or issue not within the definition stated in section 179.63, subdivision 18; provided, however, items not within terms and conditions of employment may be included in an arbitration decision if such items are contained in the employer's final position. Any issue or order or part thereof issued by the panel determining any matter not included under section 179.63, subdivision 18 or the employer's final position shall be void and of no effect. * * * "

"terms and conditions" of Minn.St. 179.63, subd. 18.[3]

It is to be recalled that the major purpose underlying PELRA is to prevent labor disputes and the resulting harmful impact on the public. Towards this end, the Act significantly restricts the public employees' right to strike. Minn.St. 179.64. Recognizing that this is a severe limitation on the employees' right to seek redress for their labor concerns, this court has inferred that "the legislature intended the scope of the mandatory bargaining area to be broadly construed so that the purpose of resolving labor disputes through negotiation could best be served." *International Brotherhood of Teamsters, Local No. 320 v. City of Minneapolis,* 302 Minn. 410, 415, 225 N.W.2d 254, 257 (1975).

This liberal attitude is applicable to the terms and conditions of employment. In *Minneapolis Federation of Teachers, Local 59 v. Minneapolis Special School District No. 1,* 258 N.W.2d 802 (Minn.1977), the issue before the court was whether the school district's procedures for transferring teachers had to be negotiated with the teachers' bargaining representative pursuant to PELRA. After noting that the decision to transfer teachers is a managerial function not subject to negotiation, the court went on to state that:

" * * * The criteria for determining which teachers are to be transferred, however, involves [sic] a decision which directly affects a teacher's welfare and enters into a field which we hold is in fact negotiable." 258 N.W.2d 805.

Although the court did not go on to reason that because the matter is negotiable, it is a term and condition of employment and must be arbitrated, this was not necessary because the issue was not being arbitrated. Nevertheless, the rationale quoted above is equally applicable where the issue is whether a matter can be arbitrated. If an issue in a labor dispute affects employees' welfare, and is not part of managerial function; it is a term or condition of employment. We do not believe that the legislature intended that employment concerns that directly affect the employees' welfare may only be negotiated, but cannot be raised before the arbitration panel, absent the employers' approval.

In the instant case, the survivorship clause directly affects the welfare of the public employees. It is not difficult to conceive of a situation in which a city, after the expiration of an employment contract, would cut back on employee wages or benefits if the city deemed it desirable. We do not mean to impute ill motives to the cities; there may be times when revenues are low and cutbacks will have to be made. Situations like that, however, exemplify the direct effect a unilateral act could have upon employees' welfare and the importance of preserving the status quo until a new contract is reached. Another consideration is that a city is usually better able to withstand a tight financial situation than is a public employee, especially if he or she heads a family. Nor may retroactive payments adequately compensate for an extended period of work at reduced benefits. The contract in the instant case, for example, covered a term of 1 year from January 1 to December 31, 1976. The parties began negotiating in 1975 for the 1976 contract. After the parties were unable to arrive at an agreement, Local 1215 petitioned for binding arbitration. The hearing was held January 26 and 28, 1977. The award was finally issued on March 31, 1977. If a city were to make unilateral cutbacks in contract wages and benefits during an extended period of negotiation, the potential ef-

3. "The term 'terms and conditions of employment' means the hours of employment, the compensation therefor including fringe benefits except retirement contributions or benefits, and the employer's personnel policies affecting the working conditions of the employees. In the case of professional employees the term does not mean educational policies of a school district. The terms in both cases are subject to the provisions of section 179.66 regarding the rights of public employers and the scope of negotiations." Minn.St. 179.63, subd. 18.

fect on the employees and the attendant impact on vital services would be obvious.

Richfield argues that there is no need to extend the contract because no employer would try to roll back all benefits for fear of being charged with an unfair labor practice. We hardly think the legislature intended that the courts be burdened with determining such charges as a precondition to continued negotiations.

It is also asserted that Local 1215 will have no incentive to negotiate because the contract serves as a "firm backstop to their bargaining." However, the financial knife cuts two ways; there may be times when Richfield would prefer to continue the contract in force, as during periods of inflation. In either situation, PELRA requires that both parties deal in good faith. Minn.St. 179.65, subd. 4; 179.66, subd. 2. The likelihood of bad faith bargaining is also mitigated because either party may seek arbitration after an impasse is reached. Therefore, the arbitration panel had jurisdiction to render an award with respect to issue IX.

Minn.St. 179.70, subd. 1, mandates that no contract shall exceed 3 years in duration. Because of this limit, although the arbitrators could determine that the contract would continue in effect from year to year until a successor contract was concluded, the award could not extend such a contract beyond December 31, 1978; thus the arbitration panel's award is modified to that effect.

▮ 3. Local 1215 contends that the trial court did not have jurisdiction to hear this case under the Uniform Arbitration Act, Minn.St. c. 572, because it does not apply to cases involving interest disputes—the type of dispute in the instant case and distinguished from grievance disputes—between public employees and their employers.

Although this court had ruled that the Uniform Act did not apply to public employees, *In re Discharge of Johnson*, 288 Minn. 300, 180 N.W.2d 184 (1970), that rule was changed after the enactment of PELRA. In *State v. Berthiaume*, 259 N.W.2d 904 (Minn.1977), it was held that the Uniform Act applies to a public or private sector collective bargaining agreement containing an arbitration clause, unless the agreement provides otherwise. 259 N.W.2d 909. Local 1215 argues that because Berthiaume involved a grievance arbitration, it should not apply to interest arbitration suits under PELRA. We find little basis for making the kind of distinction for which Local 1215 argues, particularly under the facts of the instant case.

It would have been an exercise in futility for Richfield to go back to the panel to present the issue of the arbitrability of the survivorship clause. While Local 1215 sought to persuade the panel to include the clause in the agreement, Richfield argued that the provision was not within the terms or conditions of employment and should not be considered during the arbitration. Since it would have been futile for Richfield to return to the arbitration panel, redress may be sought in district court.

This is not to suggest that aggrieved parties should automatically turn to the courts; they should not. In most situations it is preferable that arbitration be used as a means of resolving public employee labor disputes, and parties are encouraged to seek redress by returning to the panels. However, in cases such as the instant one, a party need not return to the arbitration panel.

Local 1215 goes on to assert that Richfield should have presented its amendment to the arbitration panel before seeking review by the district court, as prescribed by Minn.St. 179.66, subd. 5.[4] Since this was

---

4. Minn.St. 179.66, subd. 5, states: "Any provision of any contract required by section 179.70, which of itself or in its implementation would be in violation of or in conflict with any statute of the state of Minnesota or rule or regulation promulgated thereunder or provision of a municipal home rule charter or ordinance or resolution adopted pursuant thereto, or rule of any state board or agency governing licensure or registration of an employee, provided such rule, regulation, home rule charter, ordinance, or resolution is not in conflict with sections 179.61 to 179.66 and shall be returned to the arbitrator for an amendment to make the provision consistent with the statute, rule, regulation, charter, ordinance or resolution."

not done, Local 1215 insists that Richfield did not properly exhaust its administrative remedies.

It is fundamental that before judicial review of administrative proceedings will be permitted, the appropriate channels of administrative appeal must be followed. Indeed, "[i]nherent judicial power may not be asserted unless * * * reasonable legislative-administrative procedures are first exhausted." *In re Clerk of Lyon County Courts' Compensation*, 308 Minn. 172, 181, 241 N.W.2d 781, 786 (1976). However, this rule is not absolute; it is tempered by practicality. The doctrine of exhaustion of administrative remedies is not applicable where it would be futile to seek such redress; consequently, a party so situated may go to the courts for redress. *State Board of Medical Examiners v. Olson*, 295 Minn. 379, 387, 206 N.W.2d 12, 17 (1973).

Also, the constitutional issues raised by Richfield are properly decided by a court and do not come within the ambit of Minn.St. 179.66, subd. 5. This provision requires a party to return to the arbitrators when a contract provision would violate or conflict with any Minnesota statute or rule, municipal home rule charter, ordinance or resolution, or a rule of any state board or agency governing licensure or registration of employees. Absent from that list is the state constitution. It may be inferred that the panel does not have authority to make determinations concerning the constitution. Nor is it unreasonable to believe that the legislature did not want the arbitrators to have the power to declare PELRA or its provisions unconstitutional. The whole tenor of the law is constructive: arbitrators are to resolve disputes between the parties; public employee labor strife and work cessations are to be prevented; and arbitrators are to ensure that provisions of the agreements comport with existing law. It does not seem consistent with these prescriptions and goals that the legislature also intend to permit the arbitrators to be able to declare PELRA or its provisions null and void, thereby undermining all that the legislature seeks to accomplish.

Although this court has stated that Minn.St. 179.66, subd. 5, is "unclear and difficult to understand," *International Brotherhood of Teamsters, Local No. 320 v. City of Minneapolis*, 302 Minn. 417, 225 N.W.2d 258, under the circumstances in the present case, Richfield did not have to present these issues to the panel again before seeking judicial relief.

Thus, the trial court is affirmed in all respects, with the exception that the award is modified to provide that the extended contract cannot be effective beyond December 31, 1978.

Affirmed.

PETERSON and TODD, JJ., took no part in the consideration or decision of this case.