HENNEPIN COUNTY AMBULANCE
DRIVERS ASSOCIATION,
Appellant,

v.

COUNTY OF HENNEPIN, and
Hennepin County Medical
Center, Respondents.

No. C3–86–622.

Court of Appeals of Minnesota.

Oct. 7, 1986.

Bruce P. Grostephan, Peterson, Engberg & Peterson, Minneapolis, for appellant.

Thomas L. Johnson, Hennepin Co. Atty., Ann L. Alton, Sr. Asst. Co. Atty., Minneapolis, for respondents.

Heard, considered and decided by LESLIE, P.J., and WOZNIAK and CRIPPEN, JJ.

## OPINION

LESLIE, Judge.

The trial court vacated an arbitrator's award which granted the union a three percent increase in pay and ordered the county to reinstate a twelve hour work shift. The union appeals, claiming the trial court erred in finding that the arbitrator exceeded the scope of his authority. We affirm.

## FACTS

Appellant Hennepin County Ambulance Drivers Association is a union representing paramedics and ambulance workers who work for the county. The union entered into a collective bargaining agreement with the respondents Hennepin County and the Hennepin County Medical Center. Article V, Section 1 of the agreement stated that the employer shall retain whatever rights and authority necessary for it to operate the affairs of the county, including the right to schedule working hours and to assign overtime. Article IX of the agreement covered work schedules and premium pay. Section 1 stated that this article was intended only to define the normal hours of work and to provide the basis for calculating overtime. Section 2 stated that a payroll period shall be an averaged eighty hours. Section 3 stated that work shifts and staffing schedules would be estab-

lished by the employer and that a work shift shall consist of eight hours if based on a five day work week. The agreement also provided that if in bargaining for a future contract the parties could not reach an agreement, either party could petition the Minnesota Bureau of Mediation Services to take jurisdiction of the matter.

Article IX, concerning work schedules and premium pay, was later modified. Section 2 was modified so that the payroll period would be eighty four hours, and Section 3 was modified so that a work shift would consist of 12 hours if based upon a seven work day per pay period schedule. Pursuant to this agreement, the members of the union generally worked twelve hours per day for seven days in a row and then had seven days in a row off. Although they worked eighty four hours per pay period, they would collect no overtime unless they worked more hours. The addendum stated that if the association withdrew its endorsement of the twelve hour shift the terms of the prior agreement would be reinstated. The addendum further stated that if the county wanted to discontinue the twelve hour shift, it could if it gave notice to the association.

In February 1985, the United States Supreme Court decided *Garcia v. San Antonio Metropolitan Transit Authority,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985). There, the Supreme Court held that the minimum wage and overtime pay provisions of the Fair Labor Standards Act were applicable to local government employees. Based on this holding, the county would have to pay the ambulance workers overtime for every hour over forty they worked each week. Because the county did not want to pay overtime, the county advised the union that it was going to change the twelve hour work shift.

At this time, the parties were negotiating a new contract to cover the time period between April 1985 and March 1987. When the parties could not come to an agreement, appellant requested mediation. When that failed, appellant requested arbitration under the Charitable Hospital Act.

*See* Minn.Stat. § 179.38 (1984). The arbitrator was chosen and a hearing was held on October 1 and 2, 1985.

Appellant presented the arbitrator with two options. The first proposal kept the twelve hour shifts and called for a three percent increase in wages. The second proposal called for a nine percent cost of living increase over two years, a five percent income maintenance factor, and a one percent increase for increased productivity.

Respondent presented one proposal that all wages be increased by four and one-half percent each year. Respondents argued that the arbitrator could not determine the issue of shift lengths because the parties did not agree that that issue was an item in dispute and because the shift length was an inherent managerial right that respondent never waived.

The arbitrator selected appellant's first proposal, granting a three percent pay increase and ordering a return to the twelve hour work shift. The county filed a motion to vacate the arbitrator's award on the grounds that the arbitrator exceeded his powers. The trial court granted the county's motion, vacated the arbitration award, and ordered a new hearing to be held before a new arbitrator or arbitrators. In a memorandum the court stated that the county need arbitrate only the maximum hours of work, and need not arbitrate the length of shifts. The right to determine shift length, the court felt, was an inherent managerial right that could only be negotiated if there was a waiver in clear and unmistakeable language. Because there was no waiver, the court felt that the arbitrator did not have jurisdiction to order the return of the twelve hour shift. The association appeals.

## ISSUE

Did the trial court err in ordering the arbitrator's award vacated?

## ANALYSIS

A court may vacate an arbitration award if the arbitrator exceeded his or her power.

Minn.Stat. § 572.19 subd. 1(3) (1984). The award will be set aside only when the objecting party meets its burden of proving the arbitrator clearly exceeded the powers granted to him or her. *Children's Hospital, Inc. v. Minnesota Nurses Association,* 265 N.W.2d 649, 652 (Minn.1978). Courts may not overturn an arbitrator's award merely because the court disagrees with the arbitrator's decision on the merits. *Id.*

The collective bargaining agreement in question is governed by the Charitable Hospitals Act. *See* Minn.Stat. §§ 179.-35–.38 (1984). Because of the strong public interest in keeping charitable hospitals in operation, this act prohibits all hospital employees from striking and prohibits any charitable hospital from declaring a lockout. The act states that if any labor dispute cannot be settled by negotiations between the employer and the employees, either party may submit the issues to mediation. Minn.Stat. § 179.38. If the dispute is not settled within ten days of submission to mediation, either party may submit to arbitration "any unsettled issue of maximum hours of work, minimum hourly wage rates, and other conditions of employment concerning union security." *Id.*

The question then is whether the twelve hour shift was an issue that the arbitrator could settle. Determining the regular shift length is not a question of maximum hours of work, but a question of usual hours of work. The statute does not state that the arbitrator may settle issues concerning the usual hours of work. Had the legislature intended the arbitrator to do so, it could easily have said so. We will not interpret the statute to allow the arbitrator to determine the normal work shift of the county's employees.

Appellant contends that the Minnesota Supreme Court has already interpreted the term "maximum hours of work" in the Charitable Hospitals Act to include the normal hours of work. Appellant relies on *Fairview Hospital Association v. Public Building Services and Hospital and Institutional Employees Union Local No. 113, A.F.L.,* 241 Minn. 523, 64 N.W.2d 16 (1954).

There, appellant contends, the supreme court defined the term "maximum hours of work" to include "matters relating to daily hours of work." *Id.* at 541, 64 N.W.2d at 28.

Appellant misreads the supreme court's opinion. The supreme court did not hold that the term included matters relating to daily hours of work. The supreme court actually stated, "Provisions for compulsory arbitration of 'maximum hours of work' * * * *considered broadly, as plaintiffs suggest* in their offer to arbitrate, *would seem to cover* matters relating to daily hours of work." *Id.* (emphasis added). The court's holding does not support appellant's contention that the arbitrator may determine the normal hours of work.

The *Fairview Hospital* court also went on to state, "It is equally clear that such arbitration would not extend to issues * * involving questions of *internal management* and like obligations which rest squarely upon plaintiffs for the safe and efficient operation of their hospitals." *Id.* (emphasis in original). We believe that the determination of shift lengths and normal work hours are matters of inherent managerial concern which the arbitrator has no power to determine. *See City of Richfield v. Local No. 1215, International Association of Fire Fighters,* 276 N.W.2d 42, 47 (Minn.1979). Had respondent consented to have the arbitrator decide the issue, the matter might be different. Because the county did not consent to arbitrate the issue, we affirm the trial court's determination that the arbitrator exceeded his power in ordering the twelve hour work shift.

### DECISION

Because the arbitrator exceeded his scope of authority, we affirm the trial court's vacation of the arbitrator's award.

Affirmed.