JOHN M. JOHNSON, A MINOR, BY EVERETT JOHNSON,
HIS FATHER AND GUARDIAN AD LITEM, AND ANOTHER
v. JAMES HOLZEMER AND OTHERS.
WILLIAM HOLZEMER, THIRD-PARTY DEFENDANT.

116 N. W. (2d) 673.

July 13, 1962—No. 38,373.

228

*Harold E. Farnes,* for appellants.
*Carroll, Thorson, Anderson & Cronan,* for respondents Holzemer.
*Ryan, Kain, Mangan, Westphal & Kressel,* for respondents Sworsky and Fischer.

THOMAS GALLAGHER, JUSTICE.

Action for damages arising out of an accidental shooting on November 15, 1958, during a hunting trip at Rock Lake in Aitkin County. Present at the time were John M. Johnson, age 15 years, who was the victim; James Holzemer, age 13 years, who did the accidental shooting; and William Holzemer, his brother, age 16 years.

In this action John M. Johnson, through his father Everett Johnson, and Everett Johnson, personally, seek damages against James Holzemer and his father, Carl Holzemer; against Frank Sworsky, upon whose land the accident occurred; and against Edward Fischer, son-in-law of Frank Sworsky who had provided transportation for the three boys to the Sworsky property and who for a short time before the accident had hunted with James Holzemer. In a cross-claim and in a third-party action, Sworsky and Fischer seek contribution from the Holzemers in the event they are found negligent.

Plaintiffs' claim of negligence is based upon Minn. St. 615.10, which provides:

"No minor under the age of 14 years shall handle, or have in his possession or under his control, except while accompanied by or under the immediate charge of his parent or guardian, any firearm of any kind for hunting * * *. Every person violating any of the foregoing provisions, or aiding or knowingly permitting any such minor to violate the same, shall be guilty of a misdemeanor."

A general verdict was returned in favor of all defendants. The jury also returned findings on interrogatories submitted to them by the court. The jury determined thereby that James Holzemer was guilty of negligence proximately causing the accident; that Carl Holzemer, father of James, had violated § 615.10, but that such violation was not a proximate cause of the accident; that William Holzemer, brother of James, had violated § 615.10, and that such violation was a proximate cause of the accident; that plaintiff John M. Johnson had not violated § 615.10, and that at the time of the accident he did not know that James Holzemer was under the age of 14, but that, in the exercise of reasonable care, he should have known it, and that he was guilty of negligence which was a contributory cause of the accident; and that neither Frank Sworsky nor Edward Fischer had violated § 615.10. Irrespective of such findings, the jury determined that John M. Johnson's compensatory damages were $15,000, and that Everett Johnson's damages for medical and allied expenses were $3,300.

Shortly before the verdict was returned and after the jury had deliberated for more than 10 hours, one of the jurors became violently ill. At 8:45 p. m. he was removed to a hospital. The court then called plaintiffs' counsel and informed him as to this occurrence while the remaining jurors were still deliberating. Plaintiffs' counsel a few minutes later advised the court that he desired that a mistrial be ordered. Counsel for the parties returned to the courtroom about 10 p. m. at the court's request, and the following proceedings were had:

"The Court: * * * At this particular time I invite counsel to indicate their pleasure as to whether or not they will stipulate to go

on with eleven jurors or, in failure thereof, to state in to the record anything he may think appropriate.

"Mr. Farnes [counsel for plaintiffs]: At this time the plaintiff moves for a mistrial on the basis that one of the twelve jurors has become ill and incapacitated.

\* \* \* \* \*

"Mr. Carroll [counsel for defendants James and Carl Holzemer]: It is my position, Judge, that in view of the motion of the plaintiff for a mistrial, we have no alternative. We have no choice.

"The Court: I propose to call the jury in, ask them a few questions, and then I will see what I shall do."

At this point the bailiff informed the trial judge that the jury had reached a verdict, after which the following occurred:

"The Court: Well, have them bring in the verdict. I may have to send them back to sign it, unless they have all signed it, because we will make a five-sixths verdict out of it.

\* \* \* \* \*

"The Court: Members of the Jury, I am advised that you informed the bailiffs that you have a verdict. However, before I ask, under the circumstances I feel it would be necessary to return what I previously described as a five-sixths verdict, all eleven of you signing that verdict. Has that been done?

"The Foreman: Yes, Your Honor.

"The Court: All right. Mr. Foreman, has the jury reached a verdict?

"The Foreman: Yes, we have, Your Honor.

"The Court: All right. If you will hand it to the bailiff, please.

\* \* \* \* \*

"The Court: Dated October 18, 1960. And unless counsel wishes me to read the names of each and every one of the eleven remaining jurors I shall omit that.

\* \* \* \* \*

"The Court: Will you waive it?

"Mr. Farnes [counsel for plaintiffs]: Without prejudice to the—

"The Court: Without prejudice.

"Mr. Farnes: Yes.

* * * * *

"The Court: So say you one, so say you all? Gentlemen, do you wish me to poll the jury?

* * * * *

"Mr. Farnes: Waive it with the same understanding.

* * * * *

"The Court: I will ask this question: Is there any juror who has not concurred in this verdict?"

On appeal from an order denying their motion for a new trial plaintiffs contend that (1) the motion for a mistrial should have been granted because of the failure to have 12 jurors determine the verdict; (2) plaintiff John M. Johnson was free from negligence as a matter of law; (3) the court erred in instructing the jury that any party to the lawsuit, having knowledge that James Holzemer was under the age of 14 years, who by words or conduct allowed, tolerated, agreed, or consented to his using the gun or having it in his possession violated § 615.10; and (4) the court erred in refusing to instruct the jury as requested by plaintiffs that the word "permitting" implies the power or authority to permit and that defendants Carl Holzemer, Frank Sworsky, and Edward Fischer were the only persons who had the power or authority to permit James Holzemer to use the shotgun.

The accident happened when John M. Johnson, William Holzemer, and James Holzemer were hunting on land belonging to Frank Sworsky near Rock Lake in Aitkin County. Frank Sworsky is an uncle of the Holzemer boys and on several prior occasions had permitted them to visit his cabin for fishing and hunting purposes. The Holzemer boys lived in Minneapolis and were friends and former neighbors of John M. Johnson, who had been their guest at the Sworsky cabin on previous fishing and hunting trips.

The visit during which the accident happened had been planned two days in advance of November 15, 1958. Everett Johnson had agreed that his son John might go hunting on Sworsky's land with James and William Holzemer and their father, Carl. They were to leave Minne-

apolis on Friday, November 14, 1958, and drive to the cabin for the weekend. On Thursday Carl Holzemer was ill, so he did not accompany the boys on the trip. This was unknown to Everett Johnson until after the accident. On the afternoon of November 14 the boys were "picked up" in Minneapolis by Mrs. Sworsky and first driven to the Sworsky residence in St. Paul. There they transferred to the car of Edward Fischer who drove them to the cabin. They arrived there late that evening and on the following morning began their hunting activities. In this, they were left pretty much to their own devices. Frank Sworsky at no time accompanied them but went hunting alone. During the morning John and William hunted together, while James accompanied Fischer for a short time. About noon all boys returned to the cabin and shortly thereafter William and John decided to hunt ducks. As they were leaving the cabin, James asked his brother William for permission to accompany them, and William agreed that he might. All three left the cabin, each carrying a shotgun, and started down a path leading from the cabin. William was in the lead, followed in order by John and James. James then asked the others to wait for him, as he had to return for some purpose, and he was told that they would walk slowly so that he might catch up with them.

William and John continued down the path to the lake. James then began to follow them, carrying a .410 shotgun on his left shoulder in a "bottom up" position, with a candy bar in his other hand. He had begun to bring the gun from his shoulder so that it could be pointed toward the ground in a "bottom down" position when it accidentally discharged and shot John in the back. James had not tripped, stumbled, or fallen, and there was nothing wrong with any part of the gun. John had had no warning of any danger. Neither Sworsky nor Fischer were present at the time.

At the trial, evidence disclosed that the gun carried by James belonged to Sworsky and that he had loaned it to Carl Holzemer several weeks before the accident; that the latter had permitted James to use it on previous occasions so that he was familiar with its use and operation; and that James had brought it from Minneapolis.

In their testimony, both Sworsky and Fischer denied having any knowledge as to the age of James Holzemer, but there was evidence

sufficient to support a finding that both may have known that he was under 14 years of age at the time of the accident.

In its charge to the jury the court stated with reference to § 615.10:

"By the terms of said Statute * * * James Holzemer's hunting was in violation thereof and it was illegal for him to hunt at the time and the place in question without being accompanied by or under the immediate charge of his mother or father, which he was not. The Statute further provides 'Every person aiding or knowingly permitting any such minor to violate the same shall be guilty of a misdemeanor.' * * *

"In determining whether a defendant or plaintiff John Johnson violated such provision, I shall define for you certain words and phrases. The phrase 'Every person' includes both adults and minors. The word 'Aiding' is * * * to give support, help or succor to, to allow, to permit, to tolerate or to consent.

\* \* \* \* \*

"* * * any party to this lawsuit having knowledge that James Holzemer was under the age of 14 years at the time and place in question, and such party by words or conduct or both allowed, tolerated, agreed to or consented to James handling a gun * * * for any kind of hunting * * * violated the aforesaid Statute.

"* * * if you find that John [plaintiff] aided or knowingly permitted James to violate the Statute, and if you further find that his, that is, John's violation contributed proximately to the accident as a cause, then neither he nor his father may recover * * *."

With respect to the issues of negligence, the court stated:

"Independent of any statutory provision, the law imposes upon those hunting the same duty, each to use his faculties, to keep a proper look-out for possible danger to himself and others, and exercise reasonable care in meeting the situation at hand. If either James Holzemer or John Johnson could, in the exercise of reasonable care, have discovered the danger in time to have avoided the accident and failed to exercise such care, such would be negligence on the part of such party or parties as the case may be.

\* \* \* \* \*

"In considering the matter of negligence or contributory negligence of a child, you are instructed that a child is not held to the same standard of conduct as an adult, and is only required to exercise that degree of care which ordinarily is exercised by children of like age, mental capacity and experience under the same or similar circumstances.

"There is no precise age at which as a matter of law a child comes to be held accountable for his actions by the same standard as applies to an adult. It is for you * * * to determine the mental capacity, the experience of the child, and whether his conduct was or was not such as might reasonably have been expected from a child of like age, capacity and experience under the same or similar circumstances."

Subsequent to the verdict, plaintiff moved for an order setting it aside and granting them a new trial on the grounds that (1) the verdict was null and void because not rendered through the deliberation of 12 jurors; (2) the court erred in failing to instruct the jury as requested by plaintiffs that the word "permitting" as used in § 615.10 necessarily implies the power or authority to grant permission, and that only defendants Carl Holzemer, Frank Sworsky, and Edward Fischer had such authority with respect to James Holzemer; and (3) the court erred in refusing to instruct the jury as requested by plaintiffs that plaintiffs were free from negligence and that a finding in their favor on this issue was required.

■ With respect to plaintiffs' contention that a jury of 11 persons could not return a valid verdict, defendants rely upon § 546.17,[1] which authorizes a jury in civil actions to return a five-sixths verdict after 6 hours of deliberation; and upon § 546.13,[2] which authorizes

---

[1]Minn. St. 546.17 provides: "In any civil action or proceeding in any court of record the jury therein may return a verdict, after six hours of deliberation, upon an agreement by five-sixths of its number. The jury's deliberation commences when the officer in charge of the jury is sworn. The clerk records that time."

[2]§ 546.13 provides in part: "If a juror becomes sick or otherwise unable to perform his duty, the court may discharge him. In that case, unless the parties consent to accept the verdict of the remaining jurors, another may be sworn in his place and the trial begun anew, or the jury may be discharged and another then or afterward impaneled."

the court to accept a verdict of 11 jurors where the remaining juror has become incapacitated and the litigants consent to such a procedure. Defendants assert that, by failing to further protest upon return of the verdict by 11 jurors, plaintiffs waived their right to insist upon a jury of 12 persons and in effect consented to the verdict of the remaining jurors.

As originally established, Minn. Const. art. 1, § 4, guaranteed the right of a trial by a jury in all civil cases without regard to the amount in controversy, and under this constitutional provision the legislature has defined the jury required thereby as "a body of 12 men or women, or both, impaneled and sworn in the district court to try and determine, by a true and unanimous verdict, any question or issue of fact in a civil or criminal action or proceeding, * * * ." Minn. St. 593.01; Lommen v. Minneapolis Gaslight Co. 65 Minn. 196, 68 N. W. 53. Subsequently by amendment adopted November 4, 1890, Minn. Const. art. 1, § 4, was modified to authorize the enactment of legislation permitting a verdict in civil cases by agreement of five-sixths of a jury after not less than 6 hours of deliberation. Pursuant to such authority, the legislature enacted L. 1913, c. 63, § 1, later amended by L. 1955, c. 220, § 1 (Minn. St. 546.17). As above stated, § 546.17 provides that in all civil cases in any court of record after 6 hours of deliberation a verdict by five-sixths of a jury panel shall be sufficient and valid.

■ We do not construe the language of § 546.17 in accordance with the defendants' contention. While it is true that thereunder, after 6 hours of deliberation by a jury panel, the court may accept the concurring opinion of five-sixths of the members of the panel in civil cases, this does not mean that the deliberations of the panel leading up to such a verdict may be conducted by less than a jury of 12. It is not too unreasonable to contemplate that in the instant case if the panel of 12 jurors had continued in its deliberations the five-sixths verdict might never have been reached; or even that a verdict entirely opposite in effect might have ultimately been returned by the full panel. This would be entirely dependent upon the powers of logic and persuasion possessed by any one of the panel of 12. Likewise, the provisions of § 546.13 do not have any application here. The language

of this section clearly manifests the legislative intent that only where the litigants *consent* to the verdict by the remaining 11 jurors of a panel, as provided therein, will such a verdict be held valid. Here there was no consent either to the five-sixths verdict or to the application of the provisions of § 546.13, and there is nothing in the record which could be construed as a waiver on the part of the plaintiffs of their right to the panel of 12 jurors. Plaintiffs' counsel quite definitely manifested plaintiffs' position in this respect. Both in the telephone conversation between him and the court and later in the court's chambers before the verdict was returned, he clearly expressed his motion for a mistrial in the situation described. Thereafter, when it was indicated that the remaining 11 jurors had agreed upon a verdict, he again insisted that its reception by the court should not be held a waiver of his right to a mistrial and both the court and counsel for defendants agreed that its reception under these circumstances would be without prejudice to plaintiffs' rights. In Poppitz v. German Ins. Co. 85 Minn. 118, 120, 88 N. W. 438, 439, this court stated:

"* * * The manner of waiving such trial [by jury] provided by G. S. 1894, § 5385, is not exclusive; but when not indicated in the manner there pointed out, and the acts and conduct of a party are relied upon to show it, *the intention to waive must clearly and unequivocally appear.*" (Italics supplied.)

See, also, Hasey v. McMullen, 109 Minn. 332, 123 N. W. 1078.

It must follow that plaintiffs, having protected their right to a mistrial because of the failure to have their civil rights determined by the deliberations of a jury panel comprised of 12 persons, were entitled to a mistrial and that the court erred in denying their motion therefor.

■ We are of the opinion that the court's instruction to the effect that *any* party to this action who knew that James was under the age of 14 years and who by word or conduct allowed, tolerated, or consented to his use of the gun also violated § 615.10 placed too broad a construction on the provisions of this section. The instruction imposed upon such parties, regardless of their relationship to James, the absolute duty of preventing him from using the gun if they were aware of his age and had knowledge that he was using the gun. In our judgment the

admonitions expressed in § 615.10 were intended to extend only to persons having some right or authoritative control over a minor of the age specified, who they observed was engaged in violation of this section. Thus, a parent, a guardian, a teacher, or a law enforcement officer undoubtedly could be held bound by the statute if he were aware of its violation. Likewise, it would appear reasonable to extend its scope to include a person owning property upon which a violation of § 615.10 is occurring if such violation is directed to his attention. We do not feel that under its provisions a person having no such relationship to the minor, and without power to give or enforce commands or directions to him, should be held to be in violation of the statute merely because he is aware of the minor's use of a gun contrary to its provisions. In the instant case this conclusion would absolve both plaintiffs as well as defendants William Holzemer and Edward Fischer from liability based upon violation of the statute since none of them could by command or direction compel obedience from James or validly resort to the exercise of force to bring about the subjection of his will. On the other hand, there can be no doubt but that the statute properly applied to Carl Holzemer, as father of James, and to Frank Sworsky, as owner of the land upon which the violation of § 615.10 was taking place, provided he was aware of the boy's age and had knowledge of his violation of the law. Of course, the further question of proximate cause would have to be considered and determined in its relationship to this issue.

■ As to the contributory negligence of John M. Johnson, irrespective of § 615.10, we are of the opinion that the evidence outlined above was sufficient to create a fact question thereon, and that the trial court's instructions as they applied thereto were correct. Based thereon, the jury could find that this plaintiff, with his knowledge of guns and his experience in hunting, was negligent in proceeding down the roadway in front of James, knowing the latter's approximate age, and that under any circumstances it would be dangerous to walk in front of a person carrying a shotgun which might be loaded.

At the retrial of the issues herein, this court's conclusions on the

issue of contributory negligence, as well as on the construction of § 615.10, may be adhered to.

The order appealed from is reversed and a new trial granted.

OTIS, JUSTICE (concurring specially).

I concur in the result but dissent from that part of the opinion permitting a jury to find plaintiff guilty of contributory negligence.