STATE of Minnesota, Respondent,

v.

Bruce Charles HAMM, Appellant.

No. C8–86–2057.

Supreme Court of Minnesota.

April 29, 1988.

John E. Mack, New London, for appellant.

Paul H. Tanis, Jr., Sp. Asst. Co. Atty., St. Peter, Joel A. Watne, Sp. Asst. Atty. Gen., St. Paul, for respondent.

YETKA, Justice.

The single issue presented in this case is whether article I, section 6 of the Minnesota Constitution mandates a jury of 12 members in misdemeanor and gross misdemeanor cases.

I.

On August 9, 1986, defendant Bruce Charles Hamm was charged with various misdemeanor alcohol-related driving offenses, including DWI. He moved for a 12-person jury. However, the motion was denied based on Minn.Stat. § 593.01, subd. 1 (1986), which provides for a six-member jury in misdemeanor and gross misdemeanor cases. After a jury of 6 convicted Hamm, he moved for a new trial on the ground that he was constitutionally entitled to a jury of 12. That motion was denied, and Hamm appeals, arguing that article I, section 6 mandates a jury of 12. This court agreed to hear the case pursuant to Minn. R.Civ.App.P. 118. Based on this court's decision in *State v. Everett*, 14 Minn. 439 (Gil 330) (1869), which held that the constitutional phrase "impartial jury" imparts a body of 12 persons, we hold that section 593.01, subdivision 1 is unconstitutional and that Hamm is entitled to a jury of 12.

Article I, section 6 of the Minnesota Constitution guarantees that "[i]n all criminal prosecutions the accused shall enjoy the right to a speedy and public trial by an *impartial jury* * * *." (Emphasis added.) In addition, article I, section 4 states that "[t]he right of trial by jury shall remain inviolate * * *." Minn.Stat. § 593.01,

subd. 1 (1986) provides that, "[n]otwithstanding any law or rule of court to the contrary, a petit jury is a body of six men or women * * *." Subdivision 2 of the same statute states that, for felony cases, a jury shall have 12 members.

As we have noted in the past, a duly enacted statute carries with it a presumption of constitutionality. *See Guilliams v. Comm'r of Revenue*, 299 N.W.2d 138, 142 (Minn.1980). This court proceeds with great caution before declaring a statute unconstitutional, *see McGuire v. C & L Restaurant Inc.*, 346 N.W.2d 605, 611 (Minn.1984), and will do so only if the challenging party demonstrates beyond a reasonable doubt that it violates a constitutional provision. *City of Richfield v. Local No. 1215, Int'l Ass'n of Fire Fighters*, 276 N.W.2d 42, 45 (Minn.1979). Furthermore, in matters properly enacted by the legislature, this court must defer to that body's judgment.

We acknowledge, therefore, that a statute is presumptively constitutional and will be declared unconstitutional only after we have conducted a careful analysis. However, even a more cautious, judicial frame of mind is required when a court is faced with the possibility of overruling prior decisions. We should not be quick to overrule long-standing precedent, especially where we are construing our constitution. *State v. Naftalin*, 246 Minn. 181, 210–11, 74 N.W.2d 249, 267–68 (1956). We can overrule a previous decision only when there is good reason to do so. *Id.*, 74 N.W.2d at 267. Only if we are convinced that the prior decision is erroneous should we not let that decision stand. *Trustees of Hamline Univ. v. Peacock*, 217 Minn. 399, 411, 14 N.W.2d 773, 779 (1944). These principles should be closely adhered to, especially in the instant case which involves a fundamental right explicitly protected by the Minnesota Constitution.

II.

In 1869, just 12 years after the people adopted the Minnesota Constitution, this court interpreted the word "jury" as meaning "a body of *twelve* persons."

*Everett,* 14 Minn. at 444 (Gil at 331) (emphasis in original). Although the origins of the number 12 may be lost in history, there is no doubt that this number was considered an essential element of a jury and was incorporated into our inviolate constitutional right of trial by jury. In addressing the meaning of "trial by jury," we have stated:

> The expression "trial by jury" is as old as Magna Charta, and has obtained a definite historical meaning, which is well understood by all English-speaking peoples; and, for that reason, no American constitution has ever assumed to define it. We are therefore relegated to the history of the common law to ascertain its meaning.
>
> The essential and substantive attributes or elements of jury trial are and always have been number, impartiality, and unanimity. The jury must consist of 12; they must be impartial and indifferent between the parties; and their verdict must be unanimous.

*Lommen v. Minneapolis Gaslight Co.,* 65 Minn. 196, 209, 68 N.W. 53, 55 (1896). *See also State v. Rosenberg,* 155 Minn. 37, 38, 192 N.W. 194, 194 (1923) (essential elements of a jury include number, impartiality, and unanimity).

As an "essential and substantive" attribute of a jury, the number 12 is implicit in the term "jury" as found in the Minnesota Constitution and is not subject to change except by constitutional amendment. Indeed, a review of the history of another essential element, unanimity, demonstrates as much. In 1890, article I, section 4 of the Minnesota Constitution was amended to authorize the legislature to permit verdicts agreed upon by only five-sixths of the jury in civil actions. *See* 1891 Minn.Laws 17.

Thus, it was necessary to amend the Minnesota Constitution in order to grant the legislature authority to tamper with the essential element of unanimity. It should be no different today with respect to another essential element, the number 12. Absent a constitutional amendment, the legislature has no authority to tamper with the number 12 as an essential element of the jury.

We point out that, in our view, this case would never have arisen in Minnesota in the face of such clearly established precedent were it not for the United States Supreme Court case of *Williams v. Florida,* 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970). That case held that the United States Constitution does not require the individual states to provide 12–person juries in certain non-capital criminal offenses. While the rationale of *Williams* has been the subject of criticism in legal commentary, *see, e.g.,* Note, *The Effect of Jury Size on the Probability of Conviction: An Evaluation of Williams v. Florida,* 22 Case W.Res.L.Rev. 529 (1971); Comment, *Defendant's Right to a Jury Trial—Is Six Enough?,* 59 Ky.L.J. 996 (1971), we will not dwell at length on that opinion because the court has spoken.

Following *Williams,* our legislature adopted a Minnesota statute which allows a six-person jury in misdemeanor cases. That statute is now incorporated in Minn. Stat. § 593.01, subd. 1 (1986). That statute was passed in spite of decisions of this court dating as far back as 1869 holding that a jury under the Minnesota Constitution contains three essential elements: 12 in number, impartiality and unanimity in its decision.[1]

Regardless of the *Williams* case result, the fact is that the United States Supreme

---

1. Thus, while *Williams* held that the *federal* Constitution did not prohibit a jury of six, the case had no effect on Minnesota cases interpreting the *Minnesota* Constitution. The legislature had no authority to amend our state constitution in this way. In addition, the revision and restructuring of the state constitution in 1974 was never intended to change long-standing constitutional interpretations. As the comments by the Minnesota Constitutional Study Commission indicate, even if inadvertent changes were made in 1974, this court should "revert to the meaning of the original document." *See* Commission Comments, *reprinted* at Minn.Stat.Ann. vol. 1, p. 133. While the commission may have been aware of the conflict between interpretations of the state and federal constitutions in 1974, it failed to propose an amendment resolving the issue. That silence cannot be construed as an intent to overturn over 100 years of precedent.

Court has delegated to the states the authority to determine what number constitutes a jury for trial of criminal cases under the state's own constitution and statutes. We thus decide this case exclusively under the provisions of our own Minnesota Constitution.

It is important to remember that we sit today in our role as the highest court of the State of Minnesota interpreting our own constitution, framed and ratified by the people of this state. While a decision of the United States Supreme Court interpreting an identical provision of the federal Constitution may be persuasive, it should not be automatically followed or our separate constitution will be of little value. We may be required to interpret our own constitution more stringently than the federal Constitution, but we certainly do not do so lightly. *State v. Gray*, 413 N.W.2d 107, 111 (Minn.1987). However, we must remain independently responsible for safeguarding the rights of our own citizens and for insuring that the intent of the people of Minnesota in adopting our constitution is continued forward. In our view, the conclusion of the United States Supreme Court in *Williams v. Florida*, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970), that the sixth amendment to the federal Constitution does not mandate 12–person juries, is of little relevance here today.[2]

We are convinced that, when Minnesota adopted its constitution in 1857, the drafters assumed that a jury meant a body of 12 persons. This court affirmed that belief as early as 1869. *Everett*, 14 Minn. 439 (Gil 330). Thus, although our constitution does not specifically spell out the number required to constitute a jury, this court has done so in its decision in *Everett*. Therefore, a 12–person jury is written into the constitution by decision of this court as if it were expressly stated in the original constitution itself.

### III.

■ The question then becomes whether, since the legislature has decided that a six-person jury should be used in certain misdemeanor cases for either economical or public policy reasons, we should overrule our previous decision and, in effect, allow our constitution to be amended by statute and by judicial decision. We decline to overrule over 700 years of English common law history since the 12–person jury became established at the end of the reign of Henry II in the 12th century. We also decline to overrule our own decisions dating back to 1869 and defining what constitutes a jury under the Minnesota Constitution.

When the makers of our constitution insisted on a written constitution, this was an unique idea in both the 18th and 19th centuries. However, the makers did so deliberately with a purpose in mind. England has never had any one written constitutional document. Its constitution consists of a series of significant documents in English history, starting with the Magna Charta. Other rights are protected by tradition on the assumption that Parliament will not tamper with those rights except at its peril. The American colonists feared the vagueness and uncertainty of such a system, with the possibility of abuse by future rulers. Accordingly, they insisted on enumerating permanently certain limitations of the power of government. They specified that all government derives its power from the governed and that all powers not enumerated as being given to government were reserved in the people. Thus, where we have a clear understanding, as we do in

---

**2.** We do note, however, that, since the *Williams* case was decided, the United States Supreme Court has partially retreated from its original position in *Williams*. In *Ballew v. Georgia*, 435 U.S. 223, 98 S.Ct. 1029, 55 L.Ed.2d 234 (1978), the court held that a five-person jury violated due process as being too small in number. In its opinion, acknowledging the substantial threat to the right to a jury trial posed by smaller juries, the Court made an excellent argument that could be used to support a 12–person jury. The *Ballew* case reflects the problem raised by the *Williams* decision, for if six jurors are constitutionally permitted, could a court someday hold that five, four, or even one, is sufficient? In interpreting our state constitution, we decline to follow the same path taken by *Williams* in interpreting the federal Constitution.

this case, as to what our constitution meant in 1857, as defined almost contemporaneously in 1869 by this court, the only way that constitution should be changed is by the consent of the people in the form of a constitutional amendment as provided by the constitution itself.

While it is true that courts today are being urged to resolve disputes involving the most difficult social, economic and political issues, there are areas into which prudent courts ought not proceed. There are questions that the drafters of our constitutions, federal and state, felt were best left for the people to decide by constitutional amendment. While courts are constituted to resolve disputes, the greatest and most serious function of a supreme court, a court of last resort, is to defend the constitutional safeguards of all the citizens of the state. Therefore, what the members of this court (or the members of the legislature) think about the merits of a six-person jury is immaterial. The right to reduce the size of a jury has been vested only in the people of this state. If a written constitution can be amended by statute or by judicial fiat, it retains no sanctity whatsoever.

We are unconvinced that the court in *Everett* erred in interpreting the phrase "impartial jury" to mean a body of 12 persons. Furthermore, we are unconvinced that there is good reason to overrule *Everett*.

A number of arguments are made attempting to give us good reason to overrule *Everett*. First, it is argued that the territorial laws, effective prior to the adoption of the Minnesota Constitution, set the number of jurors at 6 in cases tried before justices of the peace, *see* Rev.Stat. (Terr.)

ch. 69, art. IV, § 58 (1851), and at 12 in other cases, *see* Rev.Stat. (Terr.) ch. 126, § 160 (1851). According to this argument, an intent is shown of the framers not to fix a specific number of jurors required by the Minnesota Constitution but, instead, to authorize the legislature to set the number. We cannot agree with this conclusion.

Although the constitutional right of trial by jury is the same as it existed under the territorial laws, *Whallon v. Bancroft*, 4 Minn. 109, 113 (Gil 70, 74) (1860), the fact that juries in cases before justices of the peace consisted of 6 members under the territorial laws is no indication that the Minnesota Constitution permits a jury of less than 12 members. At the outset, it is important to recognize that, under territorial laws as well as the Minnesota Constitution, the criminal jurisdiction of justices of the peace was limited.[3] The primary purpose of the justice of the peace was to provide the opportunity to resolve minor matters summarily. *See* White, *The Making of the English Constitution* 203 (1925). Apparently, in order to expedite matters further before justices of the peace, only a six-person jury was used. Nevertheless, a criminal defendant had a right to appeal to a district court wherein he would receive the constitutionally guaranteed trial by a jury of 12. *See* Rev.Stat. (Terr.) ch. 69, art. IV, § 185 (1851). This right to take the case before the district court was later carried forward into state law. *See* Gen.Stat. ch. 65, § 150 (1866).

Thus, although the territorial legislature did set the size of a jury at six in cases before justices of the peace, the entire procedure encompassing the right to appeal to

---

**3.** General provisions of the territorial laws dealing with justices of the peace provided that "Justices of the peace shall have power to hold a court * * *, to hear, try, and determine the charges for offenses * * * where jurisdiction is conferred upon by any law of this territory." Rev.Stat. (Terr.) ch. 69, art. IV, § 166 (1851). The types of offenses specified in other territorial laws were minor in nature and did not carry heavy punishment. *See, e.g.,* Rev.Stat. (Terr.) ch. 107, § 22 (1851) (granting justices of the peace jurisdiction to hear cases involving certain crimes against nature, which carried punishments of fines not exceeding 50 dollars and

imprisonment not exceeding 30 days). This limited jurisdiction was incorporated into the Minnesota Constitution which provided "that no Justice of the Peace shall have jurisdiction * * * in a criminal cause where the punishment shall exceed three months' imprisonment, or a fine of over one hundred dollars." Minn. Const. of 1857, art. VI, § 8. State laws enacted immediately after Minnesota gained its statehood broadened the language of the territorial laws, but retained the limited nature of the criminal jurisdiction of justices of the peace. *See* Gen. Stat. ch. 65, § 131 (1866).

the district court guaranteed the constitutional right to a jury of 12. For this reason, we cannot agree that the use of 6–person juries in cases before justices of the peace supports the authority of a legislature to set the number of jurors at less than 12.

It is important to note that the same statutes that established the number of persons to be impaneled as a jury also stated that the jury's verdict was to be unanimous. However, the fact that the legislature set forth the unanimity requirement in the statutes was not evidence of the legislature's authority to alter the unanimity requirement. As already noted, the legislature had no authority to allow verdicts by less than an unanimous jury until the constitution was amended in 1890. Thus, the mere fact that the legislature stated the number of persons to be impaneled as a jury is, likewise, no evidence of the legislature's authority to alter the number of jurors.

Next, the argument is made to overrule long-standing Minnesota precedent by suggesting that the number 12 is a mere "characteristic" of a jury changeable at the whim of the legislature. However, that conclusion ignores this court's clear and unequivocal prior statements establishing the number not as a mere "characteristic," but an "essential element" of the constitutional jury.

In an effort to support the above argument, the state relies on Minnesota history regarding women jurors. However, in *State v. Rosenberg*, 155 Minn. 37, 192 N.W. 194 (1923), the case which upheld the validity of legislation allowing women to serve as jurors, the court clearly differentiated between qualifications of individual *jurors*, which may be changed by legislation, and the essential elements of the jury itself, which remain inviolate. A close look at the *Rosenberg* decision demonstrates that reliance on the case for support here would be misplaced.

In *Rosenberg*, the defendant appealed his criminal conviction on the ground that a jury composed of men and women violated article I, section 4 of the Minnesota Constitution. The defendant unsuccessfully argued that the inviolability of his right to a jury trial required a jury composed exclusively of men, as was required at the common law. The court concluded, however, that the right to a jury trial required the retention of only the essential elements of the jury as it was understood at the common law. The specific elements mentioned by the court included "number, impartiality and unanimity." *Rosenberg*, 155 Minn. at 38, 192 N.W. at 194. Qualification and composition of the jury panel itself, on the other hand, was subject to the control of the legislature. The court concluded that the essence of the jury itself—12 impartial persons and a unanimous verdict—was unaffected by the addition of women to the jury, stating: "[N]o particular qualification of jurors has ever been considered as of the essence of trial by jury." *Id.*

When properly understood, *Rosenberg* demonstrates one of the major strengths of our constitution, perhaps the reason for its continued vitality today. The significant protection afforded by the right to a jury trial is the protection of the individual from government oppression. Over 700 years of common law history has established that the proper protection is a jury of 12, impartial and unanimous. Those elements are essential and protected as inviolate under our constitution. The original composition of that panel of 12, on the other hand, is not essential, but may be changed by legislation as society continues to develop and grow. Thus, the constitution allows for both the retention of significant common law principles and the recognition of our changing society.

It is extremely important to recognize that the changes in the composition of the jury panel were not made capriciously, but were based on radical changes in our society. Originally, the jury was composed almost exclusively of free, white men. When our constitution was adopted, the panel was composed solely of electors. Because women and most men of color were denied the right to vote, they were also denied the privilege of jury service. Their exclusion from jury service, however, was merely a

reflection of the inequities inherent in the society and was irrelevant to the essence of a jury itself.

After the ratification of the fifteenth amendment to the United States Constitution, granting black men the right to vote, and the nineteenth amendment, granting women suffrage, however, at least one badge of inequality had been removed. Since the jury in Minnesota had been drawn from electors, obviously women and men of color could be added to the jury panel. While the court in *Rosenberg* may not have believed that the United States Constitution mandated a decision upholding the statute which extended jury service to women, it is clear that the passage of the nineteenth amendment figured prominently in its decision.[4] The court recognized that women, as well as black men, had now been granted citizenship rights and that those rights should include the privileges and duties attendant to citizenship, including jury service.

The Illinois Supreme Court, upholding a similar statute making women eligible for jury service, recognized the changing perceptions of women's place in society:

Until recent times woman was not thought to be on a parity with man and it was considered that she did not possess those qualitative attributes that made her capable of exercising the right of suffrage or of rendering jury service. She was excluded from jury service on the false theory of economic, sociological and legalistic inferiority and not by any positive statement found in any of the constitutional provisions guaranteeing the right of trial by jury.

*People v. Traeger*, 372 Ill. 11, 13–14, 22 N.E.2d 679, 681 (1939). The same "false theory" referred to by the Illinois court also applied to men of color and is equally inapplicable. Even in 1923, this court found the argument that the original com-

mon law qualifications for jurors were required as part of the constitution "unthinkable." *Rosenberg*, 155 Minn. at 39, 192 N.W. at 194. Today, we recognize even more clearly the extent of the grave errors that underlay the view of women and persons of color as inferior. An argument that the addition of women to the jury somehow violates the constitutional right to a jury trial would be completely unacceptable to our present society's sense of justice, as well as a violation of both the Minnesota and United States Constitutions. *See Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664; *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692.

The constitution, by its broad and general language, allows for such significant changes to be considered by courts in interpreting its terms. We would no longer interpret the word "men," for example, to apply only to free white men, despite the framers' intent. However, unless significant changes in society or constitutional amendments require another reading, the essential protections guaranteed by the constitution must be retained. Nothing has occurred that would justify reducing the size of the jury without a constitutional amendment.

Each and every one of the protections set out in the Bill of Rights in the United States and Minnesota Constitutions is important, but two of those are the keystones to which all of the other rights are anchored; they are the right to counsel and the right to trial by an impartial jury. Without the right to a fair and impartial trial by one's peers, all of the other rights could become meaningless. It is in a court of law where an individual citizen can oppose the mighty powers of the state and prevail against it. Indeed, it is in a court of law where all of the fundamental rights of a citizen are raised. Because we believe the framers of the Minnesota Constitution

---

4. Since the decision in *Rosenberg* in 1923, the United States Supreme Court has held that the systematic exclusion of women from a jury panel violates the sixth amendment to the United States Constitution as applied to the states by the fourteenth amendment. *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690

(1975). *See also Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979). Thus, even if the Minnesota Constitution had been interpreted in *Rosenberg* to require adherence to the original common law jury qualifications, the more recent United States Supreme Court cases would invalidate that interpretation.

intended a body of 12 when they set forth the right to an impartial jury in criminal prosecutions and because there is no sound reason to overrule long-standing Minnesota authority holding that a jury is a body of 12, we must reverse the trial court.

## IV.

■ Having concluded that the Minnesota Constitution guarantees a criminal defendant's right to a 12–person jury in a misdemeanor prosecution,[5] we must strike down Minn.Stat. § 593.01 (1986) [6] as unconstitutional.

We fully understand that the statute that authorized the six-person jury has been on the books for over 15 years and that many trials and convictions have been had thereunder. We are, therefore, compelled to address the ramifications of our decision on those convictions. Our answer is that one's constitutional rights can be waived. *See State v. Zabrocki*, 194 Minn. 346, 350, 260 N.W. 507, 508 (1935) (criminal defendant may waive right to a jury of 12); *State v. Graves*, 161 Minn. 422, 424, 201 N.W. 933, 934 (1925) (failure to object to a trial without a jury constituted a waiver of the right to a trial by jury). Those defendants who have not previously raised the issue, as has the defendant in this case, are deemed to have waived the objections to a six-person jury.

Furthermore, we are convinced that our decision in this case should be applied prospectively. In *State v. Olsen*, 258 N.W.2d 898, 907 n. 15 (Minn.1977), we cited with approval various United States Supreme Court cases which set forth a test for determining whether a decision should be applied prospectively. We adopt the criteria set forth in those cases and hold that the criteria have been met in this case.

The trial court is reversed and the case remanded for a new trial before a jury of 12 persons consistent with this opinion.

KELLEY and POPOVICH, JJ., concurring specially.

AMDAHL, C.J., and SIMONETT and COYNE, JJ., dissenting.

KELLEY, Justice (concurring specially).

While I concur with the court's ultimate decision that Minn.Stat. § 593.01 (1986) violates article I, section 6 of the Minnesota Constitution, I do so on somewhat narrower grounds, and, therefore, write separately.

In 1857 when the framers of Minnesota's constitution used the word "jury" in article I, section 6, the word was generally understood by all to have the connotation it had always borne under territorial law. Under territorial law a jury in a court of general jurisdiction consisted of 12 eligible voters. At the time nonwhites and women were generally excluded from being eligible voters. *See, e.g., Whallon v. Bancroft*, 4 Minn. 109, 113 (Gil. 70, 74) (1860) (discussing Rev.Stat. (Terr.) ch. 126, § 160 (1851)); *State v. Everett*, 14 Minn. 439 (Gil. 330) (1869).

In the ensuing 130 years the composition and characteristics of the jury have been substantially altered as the result of several federal and state constitutional amendments. Thus, non-Caucasians automatically became eligible for inclusion in the jury pool by Amendment XIV, § 1, and Amendment XV of the United States Constitution. Women automatically became eligible by virtue of Amendment XIX to the Constitution of the United States and amendment to Article 7, § 1 of the Constitution of Minnesota. Until 1890, constitutionally a jury verdict had to be unanimous, but by an amendment that year to art. I, § 4, of the

---

**5.** It must be stressed that this case presents us with only the question of whether a 12–person jury is constitutionally required in criminal prosecutions. We need not, and should not, seek to decide the constitutional requirements of jury trials in civil cases.

**6.** Minn.Stat. § 593.01 (1986) states:

Subdivision 1. Notwithstanding any law or rule of court to the contrary, a petit jury is a body of six men or women, or both, impaneled and sworn in any court to try and determine, by a true and unanimous verdict, any question or issue of fact in a civil or criminal action or proceeding, according to law and the evidence as given them in court.

Minnesota Constitution, the unanimity requirement was altered to permit a five-sixth verdict. It should be noted that the change in the composition and characteristic of the jury was in each instance the product of a constitutional amendment. In no instance, until enactment of Minn.Stat. § 593.01 (1986), has an attempt been made to alter the jury's composition by statute, thereby bypassing the amendment process. Moreover, all of our cases have held that a jury consists of 12 persons. *See Lommen v. Minneapolis Gaslight Co.*, 65 Minn. 196, 209, 68 N.W. 53, 55 (1896); *State v. Rosenberg*, 155 Minn. 37, 38, 192 N.W. 194, 194 (1923) (where, albeit in dicta, the opinion specifically stressed the 12–person jury requirement.)

From this history I conclude: (1) that the understanding of the territorial legislatures was that a jury consisted of 12 persons; (2) that the word "jury" used by the founders in article I, section 6 carried with it that territorial connotation; and (3) that absent constitutional amendment, this court, when presented with issues relative to jury composition, has invariably held that a jury consists of 12 persons. On this narrow ground I join the court's opinion.

Whether the size of the jury in certain civil or criminal cases should be reduced to a number less than 12 entails the consideration or reconciliation of conflicting viewpoints on important constitutional, jurisprudential, fiscal and practical policy issues. Should the legislature conclude to re-address those issues, it should seek authority from the electorate by constitutional amendment in like manner as it did when article I, section 4 of the constitution was amended in 1890.

POPOVICH, Justice (concurring specially).

I concur in both the opinion of Justice Yetka and the special concurring opinion of Justice Kelley. Minn.Stat. § 593.01, subd. 1, is clearly unconstitutional under the reasoning of either opinion. A jury of less than 12 under Minnesota's constitution and the case law cited can only be accomplished

by a favorable vote of the electorate on an appropriate constitutional amendment.

AMDAHL, Chief Justice (dissenting).

I respectfully dissent. I do not dispute the majority's belief that the framers of the Minnesota Constitution had the number 12 in mind as the proper number of jurors in 1857 when they guaranteed the right to trial by jury. However, the fact remains that when article I, section 6 was drafted, the framers used the phrase "impartial jury," and did not specify any particular number of jurors. I do not believe that the number 12 has constitutional significance under the current language of article I, section 6.

It is my view that the legislature is constitutionally empowered to determine jury size within the limits of due process. It is true that the court in *State v. Everett*, 14 Minn. 439, 444 (Gil. 330, 331) (1869), held that "[t]he word 'jury' in this connection imports a body of *twelve* men." However, the state conceded, *i.e.*, did not controvert, that trial by a jury of six men in the justice of peace court where Everett was convicted "was not the trial by jury guaranteed by the constitution." The state only argued that the requirement of posting a bond as a condition to a grant of a trial de novo before a jury of 12 met constitutional muster. The present challenge to the requirement of a jury of less than 12 persons is the first direct challenge to the numerical requirement to come before this court. I believe *Everett's* holding to be erroneous and I would hold that Minn.Stat. Section 593.01, subdivision 1 (1986) is constitutional.

It is significant that in Minnesota the size of a jury has always been regulated by statute. If "jury" in the constitution means a panel of 12 persons, why was it necessary to enact, both before and after the adoption of the Minnesota Constitution, statutes determining jury size? Under the territorial laws, a jury was defined for some cases as a body consisting "of twelve men, chosen by lot, as prescribed in this chapter, and sworn to try and determine the issue by an unanimous verdict." Rev.

Stat. (Terr.), ch. 126, § 160 (1851). However, for cases before a justice of the peace, a jury consisted of "six persons." Rev.Stat. (Terr.), ch. 69, art. IV, § 58 (1851). After Minnesota became a state, the legislature defined a petit jury to consist "of twelve men." Pub.Stat. ch. 112, § 15 (1858). Statutory authorization for smaller juries again appears in Minn.Stat. ch. 65, § 57 (1878), which provided, for some cases, "that upon consent of both parties * * * a jury of six may be ordered." Throughout our territorial and state history, the legislature has always enumerated jury size. This court has held from its earliest decisions that the right to a jury under the constitution is the same as it existed under the territorial laws. The right was neither added to or eliminated by the adoption of the constitution. *Whallon v. Bancroft*, 4 Minn. 109, 113 (Gil. 70, 74) (1860). I believe that the unbroken line of statutes which have set juror numbers are persuasive evidence that the framers intended no fixed and unchanging number, but rather that the power to legislate jury size was carried forward into our constitution and intended to do so by the framers.

There can be no doubt that the right to an impartial jury is deeply rooted in our history. By the same token, the characteristics and composition of juries has a long tradition within our law. However, unlike the *right* to an impartial jury, the characteristics of the jury and the qualifications of jurors have not been impervious to change, nor have they been given constitutional stature. At early common law the jury was composed of persons who had actual knowledge of the case and the litigants. At one time in Minnesota, only persons eligible to vote could properly sit on juries. Thus blacks, women and most Native Americans were prohibited from participation. Additionally, at one time in our national history, even religious tests were required. However, as society has developed, all of these former requirements have been abandoned or removed. Therefore, so long as the right to an impartial jury is maintained, the incidents of the jury should be allowed to evolve. I believe that the legislature has the power to prescribe the number of jurors within due process limits.

This court has previously spoken to the powers of the legislature to determine jury size. First, in *State v. Rosenberg*, 155 Minn. 37, 38, 192 N.W. 194, 194 (1923), this court stated, albeit in dicta, that *"[u]nless otherwise provided,* 'the jury must consist of twelve.'" (emphasis added, citation omitted). Again, in *Johnson v. Holzemer*, 263 Minn. 227, 235, 116 N.W.2d 673, 678 (1962), this court, in discussing the right to a jury under article I, section 4, stated that "under this constitutional provision *the legislature has defined* the jury required thereby as 'a body of 12.'" (emphasis added, citation omitted). These references show an acknowledgment by this court that jury size is an appropriate subject matter for legislative control. Indeed, it would seem odd for this court to refer to and accept the legislature's definition of juror numbers if it were beyond the legislature's power to so define.

Other courts have wrestled with the question we face today. The state of Florida provided by statute for six member juries under a state constitutional provision that provided for "impartial jury." The statute apparently comported with the Florida Constitution's definition of "impartial jury." The statute, however, was challenged as a violation of the sixth amendment to the United States Constitution, which also provides for an "impartial jury." *See Williams v. Florida*, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970). The *Williams* court held that the sixth amendment does not require 12 jurors in state criminal cases. In *Williams,* the Court was faced with long-standing precedent that held a constitutional jury must have 12 members. 399 U.S. at 90, 90 S.Ct. at 1900; *see Thompson v. Utah*, 170 U.S. 343, 349, 18 S.Ct. 620, 622, 42 L.Ed. 1061 (1898) (a constitutional jury is "constituted, as it was at common law, of twelve persons, neither more nor less."). However, on reexamination, the Court determined that the prior courts had merely assumed that a jury must have 12 members. 399 U.S. at 90, 90 S.Ct. at 1900. The Court examined the

purposes behind trial by jury and found that its main function is to prevent government oppression of individuals. The fact that the number 12 had come into common use was viewed as the product of an historical accident. The Court concluded that freezing the size of the jury at 12 would not further the purpose of the right to an impartial jury.

Since *Williams*, several courts have examined the phrase "impartial jury" in criminal cases under state constitutions. Only one state expressly found that phrase to constitutionally require a jury of 12 in criminal cases. *See Advisory Opinion to the Senate*, 108 R.I. 628, 633, 278 A.2d 852, 855 (1971).

Other cases have found no state constitutional requirement of 12-person juries in the absence of an express mandate. For example, in *Opinion of the Justices*, 360 Mass. 877, 882–84, 271 N.E.2d 335, 339–40 (1971), the Massachusetts court held that the *details* surrounding the right to a jury are not immutable. Noting that women are now allowed to serve, in contravention to the common law, the court held that other aspects of a jury should also be allowed to adapt as society changes. *Id.* Consequently, 12–person juries were not required. *Accord Pitcher v. Lakes Amusement Co.*, 236 N.W.2d 333, 337 (Iowa 1975) (civil case).

Similarly, in *Matter of Public Law No. 305 and Public Law No. 309 of Indiana Acts of 1975*, 263 Ind. 506, 513–14, 334 N.E.2d 659, 662–63 (1975), the Indiana court validated a statute calling for six member juries in some cases. Like Minnesota, Indiana had long-standing precedent that indicated a 12–member jury was constitutionally required. *Id.* Relying on *Williams*, the Indiana court overruled these cases. *Id.* Indiana, like Rhode Island and Minnesota, has a provision in its constitution mandating that the right of a

jury remain inviolate. However, that court did not believe this disallowed the statutory change, nor should it, since only the attributes of, and not the right to a jury had been changed.

The fact that jury size has always been regulated by statute cuts against the argument that the framers of the Minnesota Constitution believed and intended that a jury must invariably be set at 12 people. In fact, much the opposite was the probable intent. It is quite likely that the framers had the number 12 in mind when they originally drafted article I, section 6, in 1857. However, it is significant that they chose not to specify a precise number.

Our state constitution, like the United States Constitution, was intentionally written in broad and general terms to allow for change as society changes. It is not enough to recognize an original intent of the 1857 framers and say that 12 was intended for all time. To do so would also put the constitutional stamp of approval on many of the other outdated concepts surrounding a jury. Not only is that wrong as a matter of policy, in light of social changes, it is also wrong as a matter of law, as constitutional amendments, decisions of this court, decisions of the United States Supreme Court and laws passed by the federal Congress have disallowed many of the incidents of the early jury.

The essential and overriding purpose of the jury in a criminal case is to allow a group of lay people to stand between the state and the defendant and use its common sense judgment in considering the facts and the law in reaching a decision on the defendant's guilt or innocence.[1]

In conclusion, I believe that all of these authorities clearly show that the legislature has the power to regulate jury size. I am also of the view that Minn.Stat. § 593.01, subdivision 1 (1986), is a valid exercise of that power. Consequently, I

---

1. Another important function served by the jury is that it spreads the responsibility of finding guilt or innocence among a group of the defendant's peers. *See Williams*, 399 U.S. at 100, 90 S.Ct. at 1905. However, I cannot see how the performance of this role is a function of any particular number of jurors. Our legislature may have and has shown to have its own views on the relative value of jury size. As our current statute demonstrates, the legislature has determined that a larger jury is preferable in felony cases. Within the limitation of due process, I think it is wholly appropriate for the legislature to make these determinations.

would overrule the *Everett* court insofar as it is inconsistent with this view and would affirm the trial court.

SIMONETT, Justice (dissenting).

I join in the Chief Justice's dissent. The framers of our constitution in 1857 may well have assumed that a jury had 12 members. They did not, however, act upon that assumption by inserting the number 12 into the document. We are construing a constitution and, within that context, it appears the framers chose not to spell out the size of the jury, preferring to leave the number to the good judgment of future generations.

COYNE, Justice (dissenting).

I join in the dissents of Chief Justice Amdahl and Justice Simonett.