Edwin **ELBERS**, former Sheriff of Rock County, individually and as class representative, et al., Appellants,

v.

Joan **GROWE**, Secretary of State of Minnesota, in her official capacity only, Respondent.

No. C1–92–2278.

Court of Appeals of Minnesota.

July 6, 1993.

Ralph J. Overholt, Bloomington, C. Peter Erlinder, St. Paul, for appellants.

Hubert H. Humphrey, III, Atty. Gen., Peter M. Ackerberg, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Considered and decided by RANDALL, P.J., and AMUNDSON and SCHULTZ *, JJ.

## OPINION

AMUNDSON, Judge.

Appellants Edwin Elbers and Joseph Villeneuve, individually and as representatives of a class of persons, filed this action seeking declaratory and injunctive relief protecting their right to run for the elective office of sheriff as guaranteed by Minn. Const. art. VII, § 6. Appellants Larry Brinkman and David Evans, both registered voters, brought this action individually and as representatives of a class of persons, arguing they have been or will be prevented from fully exercising their right to vote for candidates who are eligible to hold the office of sheriff, as guaranteed by Minn. Const. art. VII, § 1. Respondent Joan Growe is the Secretary of State of

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

Minnesota and, in her official capacity, is responsible for conducting elections in Minnesota.

Appellants challenge the trial court's determination that the legislature may set qualifications for the office of sheriff under the Home Rule Amendment to the Minnesota Constitution, Minn. Const. art. XII, § 3. We affirm.

## FACTS

The Minnesota legislature has set certain qualifications for the office of sheriff. Minn.Stat. § 387.01 (1992) provides in part:

Every person elected or appointed to the office of sheriff after August 1, 1973, and not holding a certificate of satisfactory completion of the basic course in training issued by the executive director of the Minnesota peace officers training board, shall, within one year after assuming office obtain such certificate.

Additionally, Minn.Stat. § 626.846, subd. 6 (1992) provides:

A person seeking election or appointment to the office of sheriff after June 30, 1987, must be licensed or eligible to be licensed as a peace officer. The person shall submit proof of peace officer licensure or eligibility as part of the application for office.

The Peace Officer Standards and Training (P.O.S.T.) Board sets standards for peace officers which require that candidates pass a "physical agility" test as a precondition for licensure.[1]

Appellant Edwin Elbers, the former sheriff of Rock County, wished to file for re-election, but his Affidavit of Candidacy was refused. Elbers has not met the P.O.S.T. Board requirements and alleges he cannot pass the "physical agility" test. Elbers wishes to run for sheriff in the next election but fears he will be prevented from doing so.

Appellant Joseph Villeneuve filed an Affidavit of Candidacy for the position of Itasca County sheriff. Villeneuve was removed from the ballot by order of the district court for not being licensed under the P.O.S.T. Board standards. Villeneuve fears he will be prevented from being a candidate in the next election.

Appellants Elbers and Villeneuve filed this action, arguing their right to run for sheriff under Minn. Const. art. VII, § 6 has been abridged. They contend sheriff candidates cannot be required to meet eligibility requirements that are not specifically found in the Minnesota Constitution. Appellants Larry Brinkman and David Evans joined this action arguing their voting rights, as guaranteed by Minn. Const. art. VII, § 1, will be violated if they are prevented from voting for the candidate of their choice.

Secretary of State Joan Growe argues appellants' constitutional rights have not been abridged because the Home Rule Amendment, Minn. Const. art. XII, § 3, permits the legislature to set qualifications for sheriff that exceed the requirements of Minn. Const. art. VII, § 6. Additionally, Growe asserts there is no violation of the Minnesota Human Rights Act because a physical agility requirement is rationally related to effective and safe law enforcement.

The district court rejected appellants' arguments and granted summary judgment for Growe. This appeal followed.

## ISSUES

1. May the legislature enact qualifications for the office of sheriff pursuant to the Home Rule Amendment, Minn. Const. art. XII, § 3? Do such prerequisites violate the right to seek elective office under Minn. Const. art. VII, § 6 or the right to vote for the candidate of one's choice under Minn. Const. art. VII, § 1?

---

1. Prior to obtaining a peace officer license, the applicant must meet the P.O.S.T. Board standards which insure "[m]inimum standards of physical, mental and educational fitness." Minn.Stat. § 626.843, subd. 1(d). Additionally, an appointing authority may require a

job-related examination of the applicant's physical strength and agility to demonstrate the possession of physical skills necessary to the accomplishment of the duties and functions of a peace officer.

Minn.R. 6700.0700, subpts. 1.I (1991).

2. Do the P.O.S.T. Board standards which make "physical agility" a requirement for holding the office of sheriff violate the Minnesota Human Rights Act?

## ANALYSIS

■ On appeal from a summary judgment, the role of the reviewing court is to review the record for the purpose of answering two questions: (1) whether there are any issues of material fact and (2) whether the trial court erred in its application of the law. *Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). Summary judgment is proper when no material issues of fact exist and one party is entitled to judgment as a matter of law. Minn.R.Civ.P. 56.03.

### I. *Qualifications for Office*

The right to run for elective office is guaranteed by the Minnesota Constitution which provides:

Every person who by the provisions of this article is entitled to vote at any election and is 21 years of age is eligible for any office elective by the people in the district wherein he has resided 30 days previous to the election, *except as otherwise provided in this constitution,* or the constitution and law of the United States.

Minn. Const. art. VII, § 6 (emphasis added).

The Home Rule Amendment, which was added to the Minnesota Constitution in 1958, provides:

The legislature may provide by law for the creation, organization, administration, consolidation, division and dissolution of local government units and their functions, for the change of boundaries thereof, for their elective and appointive officers *including qualifications for office* and for the transfer of county seats.

Minn. Const. art. XII, § 3 (emphasis added).

Prior to the enactment of the Home Rule Amendment in 1958, the legislature clearly lacked the power to set eligibility requirements for county offices. *See, e.g., State ex rel. Boedigheimer v. Welter,* 208 Minn. 338, 341, 293 N.W. 914, 915 (1940) (relying on art. VII, § 6, court held a municipal judge need not be an attorney at law).

Appellants argue that Minn.Stat. §§ 387.01 and 626.846, subd. 6 are violative of Minn. Const. art. VII, § 6 on their face because they set qualifications for the office of sheriff not specifically found in the Constitution.

■ Statutes are presumptively constitutional. *State v. Hamm,* 423 N.W.2d 379, 380 (Minn.1988). This court's power to declare a statute unconstitutional will be exercised only when absolutely necessary and with extreme caution. *In re Estate of Turner,* 391 N.W.2d 767, 769 (Minn.1986). We will not strike down the statutes in question unless appellants demonstrate beyond a reasonable doubt that the statutes violate a constitutional provision. *See In re Tveten,* 402 N.W.2d 551, 556 (Minn.1987).

■ Appellants cite to the legislative history of Minn. Const. art. XII, § 3 in an attempt to show the legislature had no intention to alter eligibility requirements for elective offices. The use of legislative history, however, is of questionable value in the present case where the plain language of Minn. Const. art. XII, § 3 appears to clearly authorize the legislature to change "qualifications for office." *Cf.* Minn.Stat. § 645.16 (1992) (when the words of a law are not "explicit" the intention of the legislature may be ascertained by considering the contemporaneous legislative history). Additionally, statements made in committee discussions or floor debates are to be treated with caution. *Handle with Care, Inc. v. Dep't of Human Servs.,* 406 N.W.2d 518, 522 (Minn.1987).

■ In any event, the legislature's intent can also be discerned from actions immediately following voter approval of the amendment. *See Jude v. Erdahl,* 296 Minn. 200, 206, 207 N.W.2d 715, 719 (1973) (the legislature's actions following closely upon the adoption of a constitutional provision, "may well be supposed to result from the views which prevailed among the framers of the provision"). In the first legisla-

tive session following ratification of the Home Rule Amendment, the legislature required county attorneys to be "learned in the law." 1959 Minn.Laws ch. 189 (amending Minn.Stat. § 388.01).

■ Therefore, we hold it is clear from the text and legislative history of Minn. Const. art. XII, § 3 that the legislature may provide for qualifications for the office of sheriff that exceed the requirements in Minn. Const. art. VII, § 6.

■ Appellants next argue that even if the legislature intended to allow for changes in the qualifications for office, the Home Rule Amendment may not nullify the specific 100–year–old provisions of Minn. Const. art. VII, § 6 by implication without specific approval of the people. Appellants contend Minn. Const. art. XII, § 3 was not voted on by the people with the understanding that it would change the eligibility requirements for public offices set out in Minn. Const. art. VII, § 6.

Although the wording on the ballot does not clearly indicate the effect of the amendment, the attorney general, as required by statute, furnished an interpretation of the amendment stating the amendment was "[t]o authorize the legislature to provide qualifications for local government office for both elective and appointive offices." Op. Att'y Gen. 86–A (July 1, 1958.)[2] We believe the attorney general's opinion sufficiently explained the effect of the amendment to voters so that they knew what they were voting on.

■ Accordingly, we conclude the trial court did not err in determining that the legislature may enact qualifications for the office of sheriff pursuant to the Home Rule Amendment, Minn. Const. art. XII, § 3. Such prerequisites do not violate a person's right to seek elective office under Minn. Const. art. VII, § 6.

Similarly, we reject Brinkman and Evans' contention that their voting rights under Minn. Const. art. VII, § 1 have been violated. The Constitution guarantees that:

> Every person 18 years of age or more who has been a citizen of the United States for three months and who has resided in the precinct for 30 days next preceding an election shall be entitled to vote in that precinct.

Minn. Const. art. VII, § 1.

■ As we previously stated, the legislature may enact qualifications for holding the office of sheriff. These requirements do not in any way abridge the voter's right to vote because the Constitution does not require the state to place the names of unqualified candidates on the ballot. Accordingly, the trial court did not err in dismissing the claims of Brinkman and Evans.

## II. *Physical Agility Requirement*

Alternatively, appellants argue that if the Home Rule Amendment can be read to authorize limiting the right to run for the office of sheriff, a "physical agility" requirement violates the Minnesota Human Rights Act, Minn.Stat. §§ 363.01–.15 (1992), and the federal Americans with Disabilities Act, 42 U.S.C. §§ 12101–12213 (1990).

We will address appellants' claim only under the Minnesota Human Rights Act as appellants did not raise their claim under the Americans with Disabilities Act before the trial court. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988) (reviewing court must generally consider only those issues presented to and considered by the trial court).

The Minnesota Human Rights Act provides in part:

> Except when based on a *bona fide occupational qualification*, it is an unfair employment practice:
>
> \* \* \* \* \* \*

---

**2.** At least four months prior to the election, the attorney general was required to furnish to the secretary of state "a statement of the purpose and effect" of the proposed amendment. Minn. Stat. § 3.21 (1957). The secretary of state was required to publish the notice in all legal newspapers of the state. *Id.* Additionally, the coun-

ty auditor was required "to cause two copies to be conspicuously posted" at or near each polling place. *Id.* The purpose of section 3.21 was to guide people who were not educated in the law so that they could understand what they were voting on. *Knapp v. O'Brien*, 288 Minn. 103, 110, 179 N.W.2d 88, 92–93 (1970).

(2) For an employer, because of * * * disability * * *,

 (a) to refuse to hire or to maintain a system of employment which unreasonably excludes a person seeking employment.

Minn.Stat. § 363.03, subd. 1 (emphasis added).

The Act further provides that it is an unfair employment practice for an employer to "require or request the person to furnish information that pertains to * * * disability." *Id.* at subd. 1(4)(a).

It is questionable whether the Human Rights Act is even applicable to this case. First, appellants have not shown they are disabled within the meaning of the Act. Under the Act a "disabled" person is:

[A]ny person who (1) has a physical, sensory, or mental impairment which materially limits one or more major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment.

Minn.Stat. § 363.01, subd. 13.

 To fall within the class of a "disabled" person under the Act, a person's impairment must substantially limit one or more major life activities, such as ability to work, as opposed to interference with ability to obtain a specific job. *State by Cooper v. Hennepin County*, 441 N.W.2d 106, 110–11 (Minn.1989).

 Second, the Human Rights Act protects against certain types of discrimination in specified areas such as employment, housing, public services, public accommodations and education. *See* Minn. Stat. § 363.03. The Act, however, does not purport to prohibit any type of discrimination in setting qualifications for elected office.

 Nevertheless, even if appellants are considered "disabled" within the meaning of the Human Rights Act, a job restriction will be upheld if it is a bona fide occupational qualification (BFOQ). In order to qualify as a BFOQ, a job requirement must relate to the "essence" of the job or "the central mission of the employer's business" and be more than merely

"job related." *Huisenga v. Opus Corp.*, 494 N.W.2d 469, 473 (Minn.1992) (citing *International Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Johnson Controls*, 499 U.S. 187, ——, 111 S.Ct. 1196, 1204, 113 L.Ed.2d 158 (1991)).

 Appellants argue that physical agility standards cannot be a BFOQ because many of a sheriff's tasks are policy-oriented and have to do with administration rather than street patrol. While this assertion is true, it ignores the fact that many of the tasks required of a sheriff do require a certain level of physical agility. Affidavits from the current sheriffs of Rock and Itasca counties show that the sheriff must

search for lost persons, retrieve the bodies of drowned persons, drive at a high rate of speed, subdue fleeing suspects, handle a firearm with agility and respond to crisis situations generally.

Additionally, as required by statute:

The sheriff shall keep and preserve the peace * * *. The sheriff shall also pursue and apprehend all felons, execute all process * * *, and perform all the duties pertaining to the office, including searching and dragging for drowned bodies and searching and looking for lost persons.

Minn.Stat. § 387.03 (1992).

Based on these job duties, the state has a legitimate interest in having physical agility standards to protect the public safety. Physical agility is rationally related to the goal of effective and safe law enforcement. *See, e.g., United States v. City of Wichita Falls*, 704 F.Supp. 709, 714 (N.D.Tex.1988). Accordingly, we hold such standards do not violate the Minnesota Human Rights Act.

## DECISION

The trial court did not err in determining the legislature may enact qualifications for the office of sheriff pursuant to the Home Rule Amendment, Minn. Const. art. XII, § 3. Such prerequisites do not violate the right to seek elective office under Minn.

Const. art. VII, § 6, nor violate the right to vote for the candidate of one's choice under Minn. Const. art VII, § 1. Additionally, a "physical agility" requirement for holding the office of sheriff does not violate the Minnesota Human Rights Act. Accordingly, we affirm the grant of summary judgment for Growe.

**Affirmed.**