**MINNEAPOLIS TERM LIMITS COALITION, et al.,
Plaintiffs,**

v.

**Merry KEEFE, et al., Defendants.**

**No. CX–94–2137.**

Supreme Court of Minnesota.

Aug. 4, 1995.

Christopher J. Dietzen, Peter J. Coyle, Larkin, Hoffman, Daly & Lindgren, Ltd., Bloomington, for plaintiffs.

Surell Brady, City Atty., Joseph M. LaBat, Asst. City Atty., Office of City Atty., Minneapolis, for Merry Keefe.

Toni A. Beitz, Asst. County Atty., Minneapolis, for Marge Christianson.

## OPINION

KEITH, Chief Justice.

This case comes to us on an Order of Certification issued by the United States District Court for the District of Minnesota pursuant to Minnesota Statutes section 480.061 (1994) (Uniform Certification of Questions of Law Act). The certified question is as follows:

> Would an amendment to the Minneapolis city charter limiting the terms of local elected officials violate Article 7, § 6 of the Minnesota Constitution?

We answer the question in the affirmative.

Since the adoption of its city charter, the City of Minneapolis has been a home rule charter city pursuant to Minnesota Statutes Chapter 410. Plaintiff Minneapolis Term Limits Coalition ("MTLC") is an unincorporated association whose goal was to place a proposed amendment to the city charter on the November 8, 1994 general election ballot for the City of Minneapolis limiting the terms of the mayor and city council members to eight years. Individual plaintiffs are members of the MTLC steering committee. On August 15, 1994, plaintiffs filed a petition with the Office of Elections and Voter Registration seeking to place their proposed charter amendment on the ballot. On August 31, the director of the Office of Elections and Voter Registration certified that the petition contained a sufficient number of registered voter signatures. The proposed amendment states:

> **Section 1. TERM LIMITS.** Notwithstanding any other provision of law to the contrary, no person may file to be a candidate for election to a term that would cause the person to serve more than eight consecutive years in the office of Mayor or eight consecutive years in the office of City Council.
>
> Service prior to the passage of this ordinance shall not count in determining length of service.
>
> **Section 2. INSTRUCTION.** The city clerk is hereby instructed to contact, exactly as he would do if so instructed by a resolution of the Mayor or City Council, in writing, within 30 days after adoption of this ordinance, all state legislators and members of the United States Congress who have any constituents within the city limits and instruct them that it is the resolute desire of the citizens of the city of Minneapolis that term limits be enacted by the legislature of Minnesota and the United States Congress, and that the maximum consecutive tenure in office be no more than six years (three terms) in the United States House or [sic] Representatives, no more than twelve years (two terms) in the United States Senate, and no more than ten consecutive years in either the Minnesota State Senate or State House. The people of the city of Minneapolis hereby instruct all state and federal legislators, representing any part of this city, to individually do their utmost to promote and pass binding legislation or a constitutional amendment enacting the term limits specified in this section. The instruction and resolution shall remain in effect for as many years as are required to effect these changes, and shall so state on its face.
>
> **Section 3. SEVERABILITY.** If any part of this petition shall be declared unconstitutional by a court, all others shall remain in full force and effect.

Following a recommendation by the Minneapolis Charter Commission that the proposed amendment not be placed on the ballot, and based on the advice of the city attorney that the proposed amendment would violate the Minnesota Constitution, on September 12, 1994, the full city council voted not to place the amendment on the ballot. Two days later, the mayor signed the city council's resolution.

On September 14, 1994, plaintiffs filed a verified complaint in U.S. District Court seeking a declaratory judgment that the peti-

tion meets the technical requirements imposed by state law and that the city council's action violated plaintiffs' rights under the First and Fourteenth Amendments of the U.S. Constitution. Further, on September 23, 1994, plaintiffs filed a motion for preliminary injunction seeking to enjoin the defendants [1] from refusing to place the proposed amendment on the city-wide ballot for the forthcoming election.

Following a hearing and a verbal ruling from the bench on October 3, 1994, the district court filed a memorandum opinion and order denying plaintiffs' motion for a preliminary injunction and certifying the question to this court.

Under Article XII, Section 5 of the Minnesota Constitution, home rule charter amendments may be proposed "by a charter commission or by a petition of five percent of the voters of the local government unit as determined by law and shall not become effective until approved by the voters by the majority required by law." Amendments also may be proposed and adopted "in any other manner provided by law." *Id.* Pursuant to this constitutional authority, the legislature has set forth additional methods of charter amendment in Minnesota Statutes section 410.12, including a certification process for amendments proposed by a citizens' petition. Under these provisions, amendments meeting the technical requirements "shall be submitted to the qualified voters at a general or special election and published as in the case of the original charter." Minn.Stat. § 410.12, subd. 4.

■ Nevertheless, it is well established in Minnesota that when a proposed charter amendment is manifestly unconstitutional, the city council may refuse to place the proposal on the ballot. *See Davies v. City of Minneapolis,* 316 N.W.2d 498 (Minn.1982); *Housing and Redevelopment Auth. of Minneapolis v. City of Minneapolis,* 293 Minn. 227, 198 N.W.2d 531 (1972); *State ex rel.*

*Andrews v. Beach,* 155 Minn. 33, 191 N.W. 1012 (1923). In the present case, the Minneapolis City Council, following the advice of the charter commission and the city attorney, rejected plaintiffs' proposed charter amendment on the ground that it was manifestly unconstitutional. As requested by the United States District Court, we consider whether an amendment to the Minneapolis city charter limiting the terms of local elected officials would violate Article VII, Section 6 of the Minnesota Constitution.

Article VII, Section 6 of the Minnesota Constitution provides:

> Sec. 6. **Eligibility to hold office.** Every person who by the provisions of this article is entitled to vote at any election and is 21 years of age is eligible for any office elective by the people in the district wherein he has resided 30 days previous to the election, except as otherwise provided in this constitution, or the constitution and law of the United States.

In *Pavlak v. Growe,* this court interpreted article VII, section 6 as establishing universal eligibility for public office:

> This constitutional provision forcefully presents an important democratic principle—that all citizens meeting minimal, unchanging requirements are eligible for the elective positions that control their government. The opinions of this court applying Article VII, Section 6, have consistently held that, as a guarantee of universal eligibility for public office, its standards may not be made more restrictive by legislative action unless expressly authorized by another constitutional provision.

284 N.W.2d 174, 176 (Minn.1979).

Despite this guarantee of universal eligibility, plaintiffs argue that home rule charter cities have been delegated broad power by the legislature and are constitutionally authorized to impose eligibility requirements for local officials. Plaintiffs first assert that the article VII, section 6 guarantee of universal

---

1. Defendants in this action include: Merry Keefe, City Clerk of the City of Minneapolis; Joyce Mercil, Director of the Elections Department of the City of Minneapolis; Jackie Cherryhomes, President of the Minneapolis City Council; Sharon Sayles Belton, Mayor of the City of Minneapolis; James Niland, a Minneapolis City Council member; the City of Minneapolis; Marge Christianson, Supervisor of the Elections Department for Hennepin County; Pat O'Connor, Taxpayer Services Division Manager for Hennepin County; and Hennepin County.

eligibility "except as otherwise provided in this constitution * * *" is merely a constitutional floor and leaves room for the enactment of additional eligibility requirements. Citing the court of appeals' opinion in *Elbers v. Growe*, 502 N.W.2d 810 (Minn.App.1993), plaintiffs further contend that the exception contemplated by the language of article VII, section 6 is found in article XII, section 3. Under article XII, section 3, "[t]he legislature may provide by law for the creation, organization, administration, consolidation, division and dissolution of local government units * * * and appointive officers including qualifications for office." Interpreting this provision, the court of appeals in *Elbers* examined the constitutionality of a statute requiring that candidates for the office of sheriff successfully complete peace officer licensing tests. The court held that because the plain language of article XII, section 3 authorizes the legislature to enact qualifications for local offices, the legislature's enactment of these additional qualifications for the office of sheriff did not violate the right to seek elective office under Article VII, Section 6 of the Minnesota Constitution. 502 N.W.2d at 812, 813–814. Although plaintiffs acknowledge that the court of appeals in *Elbers* addressed only whether the *legislature* could enact additional qualifications for office, plaintiffs note that under the home rule system, "in matters of municipal concern, home rule cities have all the legislative power possessed by the legislature of the state, save as such power is expressly or impliedly withheld." *State ex rel. Town of Lowell v. City of Crookston*, 252 Minn. 526, 528, 91 N.W.2d 81, 83 (1958). Plaintiffs assert that under *Crookston*, if the legislature is authorized by article XII, section 3 to enact qualifications for office, so too is a home rule city.

■ We do not agree that plaintiffs' line of reasoning is dispositive in the present case. A critical distinction exists between a "qualification" for office and an "eligibility require-

ment" for office. A qualification is an element of performance requiring a particular ability on the part of the person seeking the position, such as physical agility or the attainment of a particular level of education. We believe that the legislation addressed by the court of appeals in *Elbers* established a qualification for office and fits into this category. Eligibility requirements, on the other hand, have nothing to do with one's ability to perform the duties of the office in question, and include the age and residency requirements established in article VII, section 6. Clearly, a term limit such as that proposed by plaintiffs is an eligibility requirement because it has nothing to do with the particular person's ability to perform the job; rather, it is a restriction based on a factor unrelated to job performance.[2]

■ Applying this distinction to the present case, we conclude that although Article XII, Section 3 of the Minnesota Constitution authorizes the legislature to establish qualifications for local office, the provision does not authorize the legislature to establish eligibility requirements for office. Because a term limit is an eligibility requirement and not a qualification, it is not authorized by article XII, section 3 as an exception to the guarantee of universal eligibility under article VII, section 6. We therefore answer the certified question in the affirmative and hold that an amendment to the Minneapolis city charter limiting the terms of local elected officials would violate Article VII, Section 6 of the Minnesota Constitution.

GARDEBRING, Justice (dissenting).

I respectfully dissent. To me, the question requires only a short analysis of the applicable state constitutional provisions and of our previous cases. Article XII, Section 3 of the Minnesota Constitution provides:

> Local Government; legislation affecting. The legislature may provide by law * * * for * * * elective and appointive officers

---

2. The dissent cites to a recent U.S. Supreme Court case in support of its proposition that the terms "eligible" and "qualification" are interchangeable and that a term limit is a qualification. Clearly, our analysis of the distinction between an eligibility requirement and a qualification is based entirely on the unique language of our own Minnesota Constitution, which refers to "eligibility" in article VII, section 6, but refers to "qualifications for office" in article XII, section 3. That the United States Supreme Court found no similar distinction under the provisions of the federal constitution bears no weight in the context of our discussion.

[of local governmental units] including their *qualifications* \* \* \*.

(emphasis added). The provision is without limitation; it does not say the legislature is limited to considering only educational qualifications, residency requirements or any other specific category. There can be no argument about whether the legislature can establish the qualifications for office of locally elected officials. A "term limit" requirement is a "qualification," and therefore the legislature would be constitutionally authorized to adopt the proposed term limit ordinance.

Our previous cases extend this authority to home rule cities, such as Minneapolis. In *State ex rel. Town of Lowell v. City of Crookston*, we said:

> [t]he general rule is that, in matters of municipal concern, home rule cities have all the legislative power possessed by the legislature of the state, save as such power is expressly or impliedly withheld. The adoption of any charter provision contrary to the public policy of the state, as disclosed by the general laws or its penal code, is also forbidden. The power conferred upon cities to frame and adopt home rule charters is limited by the provision that "such charter shall always be in harmony with and subject to the constitution of the state." But these limitations do not forbid the adoption of charter provisions as to any subject appropriate to the orderly conduct of municipal affairs, although they may differ from those of existing general laws.

252 Minn. 526, 528, 91 N.W.2d 81, 83 (1958) (citations omitted).

Thus, the legislative powers of a home rule city are limited as follows:

1) its charter provisions must be consistent with the public policy of the state, and

2) its charter provisions must be in harmony with and subject to the constitution and laws of the state.

The majority does not go so far as to suggest that the proposed "term limits" ordinance is somehow contrary to a plainly understood public policy. Moreover, because Article XII, Section 3 of the Minnesota Constitution authorizes the legislature to establish qualifications for locally elected officials, the proposed ordinance, which establishes a qualification, is in harmony with the constitution. Rather than deal with the plain language of Article XII, Section 3, the majority engages in a convoluted and arcane argument attempting to distinguish "qualifications" from "eligibility requirements." Nothing in the state constitution itself, nor our previous cases, supports this analysis.

We must afford charter provisions of the kind at issue here the same presumption of constitutionality as we would apply to a duly enacted legislative statute. *Guilliams v. Commissioner of Revenue*, 299 N.W.2d 138, 142 (Minn.1980). Respondents have not even come close to satisfying the substantial burden of proof applicable to them in this kind of constitutional litigation. Therefore, I would answer the certified question in the negative.

ANDERSON, Justice (dissenting).

I join in the dissent of Justice Gardebring.

STRINGER, Judge, dissenting.

I respectfully dissent. I would answer the certified question in the negative.

There is no dispute that appellants fulfilled the procedural requirements for placing the proposed term limits amendment on the November 8, 1994 ballot. Consequently, I believe the appropriate standard of constitutional review is the same as the standard applicable to a duly enacted legislative statute—the proposed amendment is presumed constitutional. *See State v. Hamm*, 423 N.W.2d 379, 380 (Minn.1988); *Guilliams v. Commissioner of Revenue*, 299 N.W.2d 138, 142 (Minn.1980). Accordingly, it may not be stricken unless the challenging party demonstrates that it is in violation of the constitution beyond a reasonable doubt. *See Hamm*, 423 N.W.2d at 380; *In re Tveten*, 402 N.W.2d 551, 556 (Minn.1987); *City of Richfield v. Local No. 1215, Int'l Ass'n of Fire Fighters*, 276 N.W.2d 42, 45 (Minn.1979).

Article VII, § 6 of the Minnesota Constitution is the starting point for determining whether the City of Minneapolis, as a home rule charter city, was required to place appellants' proposed term limits amendment on

the November 8, 1994 ballot. Article VII, § 6 of the Minnesota Constitution provides:

Eligibility to hold office. Every person who by the provisions of this article is entitled to vote at any election and is 21 years of age is eligible for any office elective by the people in the district wherein he has resided 30 days previous to the election, *except as otherwise provided in this constitution*, or the constitution and law of the United States.

Minn. Const. art. VII, § 6 (emphasis added). Following the "exception" clause to the next step, we are lead to Article XII, § 3 of the Minnesota Constitution:

Local Government; legislation affecting. *The legislature may provide by law* for the creation, organization, administration, consolidation, division and dissolution of local government units and their functions, for the change of boundaries thereof, *for their elective and appointive officers including qualifications for office* and for the transfer of county seats. A county boundary may not be changed or county seat transferred until approved in each county affected by a majority of the voters voting on the question.

Minn. Const. art. XII, § 3 (emphasis added).

The legislature, then, has constitutional authority to establish qualifications for elective office. Further, I am in agreement with the majority that if the legislature has authority to impose qualifications for elective office, so too does the City of Minneapolis as a home rule charter city. In *State ex rel. Town of Lowell v. City of Crookston*, 252 Minn. 526, 91 N.W.2d 81 (1958), we held

[t]he general rule is that, in matters of municipal concern, home rule cities have all the legislative power possessed by the legislature of the state, save as such power is expressly or impliedly withheld. The adoption of any charter provision contrary to the public policy of the state, as disclosed by general laws or its penal code, is also forbidden. The power conferred upon cities to frame and adopt home rule charters is limited by the provision that "such charter shall always be in harmony with and subject to the constitution and laws of the state." But these limitations do not forbid the adoption of charter provisions as to any subject appropriate to the orderly conduct of municipal affairs, although they may differ from those of existing general laws. The adoption of such a charter is legislation.

*Id.* at 528, 91 N.W.2d at 83 (quoting Minn. Const. art. IV, § 36) (citations omitted).

My point of departure from the majority is first, its failure to even consider that appellants' proposed amendment does not impose an eligibility or qualification standard for assuming or holding elective office at all. The proposed charter amendment provides in pertinent part:

Notwithstanding any other provision of law to the contrary, *no person may file* to be a candidate for election to a term that would cause the person to serve more than eight consecutive years in the office of Mayor or eight consecutive years in the office of City Council.

(emphasis added). The plain language of the proposal simply prohibits "fil[ing] to be a candidate for election * * *", a prohibition that clearly leaves other avenues open for achieving the office—for example, through write-in vote or, in some circumstances, by appointment. If the proposed amendment were in fact an eligibility standard in violation of Minn. Const. art. VII, § 6, unless encompassed by a constitutional exception, it would prohibit the taking of office entirely. That is not at all the proposal we have here.

Next, sealing the fate of appellants' effort to obtain a public vote on their proposal, the majority proceeds to narrowly define "qualification" for office under Minn. Const. art. XII, § 3 as "an element of performance requiring a particular ability" on the part of the candidate for office. Because the term limits provision does not relate to "a particular ability," so the majority concludes, it must be an eligibility requirement, thus falling outside the parameters of Minn. Const. art. XII, § 3, and "manifestly unconstitutional." The majority's entire analysis therefore turns on the narrow definition it accords the terms "eligible" and "qualification."

The plain meaning of the terms "eligible" and "qualification" suggests the terms are

virtually interchangeable. In its recent decision striking down an amendment to the Arkansas Constitution that prohibited the name of an otherwise eligible candidate for Congress from appearing on the general ballot if that candidate had already served a specified number of terms, the United States Supreme Court framed the issue in terms of "whether the Constitution forbids States from adding to or altering the *qualifications* specifically enumerated in the Constitution." *United States Term Limits, Inc. v. Thornton,* —— U.S. ——, ——, 115 S.Ct. 1842, 1847, 131 L.Ed.2d 881 (U.S., 1995) (emphasis added). Indeed, the Court explicitly refers to term limits as qualifications. *Id.,* —— U.S. at ——, 115 S.Ct. at 1844 ("[t]erm limits, like any other qualification for office, unquestionably restrict the ability of voters to vote for whom they wish."). Similarly, the Court repeatedly uses the term "qualifications" to refer to the age and residence requirements for membership in the United States Congress. *Id.,* —— U.S. at ——, 115 S.Ct. at 1845 (citing the "Qualifications clauses"— U.S. Const. art. I, § 2, cl. 2 (establishing membership requirements applicable to the House of Representatives); U.S. Const. art. I, § 3, cl. 3 (establishing membership requirements applicable to the Senate)); *see also id.,* —— U.S. at ——, 115 S.Ct. at 1849 (viewing Constitutional Convention debates as "manifesting the Framers' intent that the *qualifications* in the Constitution be fixed and exclusive.") (emphasis added); *id.,* —— U.S. at ——, 115 S.Ct. at 1849 (holding "[w]e thus conclude now, as we did in *Powell* [*v. McCormack,* 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969) ] that history shows that, with respect to Congress, the Framers intended the Constitution to establish fixed qualifications." (footnote omitted)). The Court ultimately holds that the challenged term limits amendment imposes an additional and unconstitutional "qualification" upon Congressional candidates, that would effect a fundamental change in the Federal constitutional framework. *Id.,* —— U.S. at ——, ——, 115 S.Ct. at 1845.

Moreover, a dictionary definition of the term "eligible" incorporates the term "qualified." *See, e.g., Black's Law Dictionary* 521, 1241 (6th ed. 1990) (defining "eligible" as "fit and proper to be chosen; *qualified* to be elected * * * * " and defining "qualified" as "adapted; fitted; entitled; * * * *eligible* * * * *.") (emphasis added)); *see also Webster's Third New Int'l Dictionary* 736, 1858 (3d ed. 1961) (defining "eligible" as "fitted or *qualified* to be chosen or used * * * " and defining "qualified" as "fitted (as by endowments of accomplishments) for a given purpose: competent, fit * * * *eligible* * * * *.") (emphasis added)). Common usage of the two terms simply does not warrant the bright line distinction in definition the majority gives them, and certainly falls short of the applicable reasonable doubt standard.

Finally, a petition to place a term limits amendment to the City Charter on the ballot is the exercise of one of the most fundamental rights of self-governance—the right of initiative. *See generally* Richard B. Collins & Dale Oesterle, *Structuring the Ballot Initiative: Procedures that Do and Don't Work,* 66 *U.Colo.L.Rev.* 47, 53–60 (1995) (discussing the history and aims of the initiative process and referring to initiatives as forms of "direct democracy"). Any curtailment of that right should be exercised with great caution. The majority would deny the right of the voters of the City of Minneapolis to cast their ballots on this important issue, hinging its determination on an all too narrow definition of the term "qualification." I disagree. I do not believe respondents have met their burden of proof of demonstrating manifest unconstitutionality beyond a reasonable doubt.